

**EXHIBIT A**



**Great American Insurance Company**
**P and C Legal**
**301 East 4th Street**
**Cincinnati, Ohio  45202-3180**

**(800) 545-4269**

## MEMORANDUM

| FROM: | **PROPERTY AND CASUALTY LEGAL DEPT.** |
|---|---|

**TO:**
☐ * PIM
Property Inland/Marine
Josh Schaad
jschaad@gaig.com

IMPORTANT REMINDER: All suits to which any of the P&C companies are a party, whether as a plaintiff, defendant, or third-party defendant require a Legal Hold Notice. The Legal Hold Data Form can be found on Gateway. Direct any questions you may have on the Legal Hold Process to Shauna Galley (sgalley@gaig.com) or Lisa Pennekamp (lpennekamp@gaig.com).

| RE: | *Summons & Complaint - Fairington Park Condominium Association v GAIC - Policy No. MAC 0323134* |
|---|---|

**STATE:** Georgia

**THE ATTACHED WAS RECEIVED IN OUR OFFICE ON 05/27/2021 AND WAS SERVED BY:**
**CT Corporation System - Date Process Served 05/21/2021**

The scanned document is being sent to you for handling.
____ Original will be retained by BSS for 30 days.
____ Original will also be sent due to contents of package.

| **Date:** May 27, 2021 | **ID:** | Document Tracking #SC41213 |
|---|---|---|

 CT Corporation

**Service of Process Transmittal**
05/21/2021
CT Log Number 539629073

**TO:**   General Counsel'S Office
Great American Insurance Company
301 E 4TH ST FL 38
CINCINNATI, OH 45202-4245

RECEIVED

MAY 2 8 2021

Great American Ins. Co.
Property & Casualty Legal

**RE:**   **Process Served in Georgia**

**FOR:**   Great American Insurance Company  (Domestic State: OH)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | FAIRINGTON PARK CONDOMINIUM ASSOCIATION, INC., etc., Pltf. vs. GREAT AMERICAN INSURANCE COMPANY, etc., Dft. |
| **DOCUMENT(S) SERVED:** | - |
| **COURT/AGENCY:** | None Specified<br>Case # 2021CV349336 |
| **NATURE OF ACTION:** | Property Damage Litigation |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Lawrenceville, GA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 05/21/2021 at 11:42 |
| **JURISDICTION SERVED :** | Georgia |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air , 1ZX212780111188174 |
| | Image SOP |
| | Email Notification,  General Counsel'S Office  clegal@gaig.com |
| **REGISTERED AGENT ADDRESS:** | C T Corporation System<br>289 S. Culver St.<br>Lawrenceville, GA 30046<br>866-331-2303<br>CentralTeam1@wolterskluwer.com |

The Information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other Information contained in the Included documents. The recipient(s) of this form is responsible for reviewing and interpreting the Included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the Information contained in this form, including for any omissions or inaccuracies that may be contained therein.

Fulton County Superior Court
***EFILED***TV
Date: 5/10/2021 12:20 PM
Cathelene Robinson, Clerk



## IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA
### 136 PRYOR STREET, ROOM C-103, ATLANTA, GEORGIA 30303
**SUMMONS**

| | | |
|---|---|---|
| Fairington Park Condominium Association, Inc. | ) Case | 2021CV349336 |
| | ) No.: | |
| d/b/a Fairington Park Condominium Association | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| Great American Insurance Company | ) | |
| | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |
| | ) | |
| | ) | |

TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file electronically with the Clerk of said Court at https://efilega.tylerhost.net/ofsweb and serve upon plaintiff's attorney, whose name and address is:

**Michael D. Turner, Esq.**
**The Huggins Law Firm, LLC**
**110 Norcross Street, Roswell, GA 30075**
**mdturner@lawhuggins.com**

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service; unless proof of service of this complaint is not filed within five (5) business days of such service. Then time to answer shall not commence until such proof of service has been filed. **IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

This_____5/10/2021_____day of_____, 20_____

Honorable Cathelene "Tina" Robinson
Clerk of Superior Court
By_____
_____Deputy Clerk_____

To defendant upon whom this petition is served:
This copy of complaint and summons was served upon you _____, 20_____

_____
Deputy Sherriff

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum is used

Fulton County Superior Cour
***EFILED***T\
Date: 5/10/2021 12:20 PN
Cathelene Robinson, Cler

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| FAIRINGTON PARK CONDOMINIUM ASSOCIATION, INC. d/b/a FAIRINGTON PARK CONDOMINIUM ASSOCIATION,<br><br>      Plaintiff,<br><br>v.<br><br>GREAT AMERICAN INSURANCE COMPANY, a foreign corporation,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     CIVIL ACTION FILE NO.:<br>       2021CV349336 |

### COMPLAINT

**COMES NOW** Plaintiff FAIRINGTON PARK CONDOMINIUM ASSOCIATION INC.,

d/b/a FAIRINGTON PARK CONDOMINIUM ASSOCIATION, by and through counsel, and

files this Complaint for breach of first party property insurance contract against Defendant,

GREAT AMERICAN INSURANCE COMPANY, and in support hereof, states as follows:

### PARTIES

1.

Plaintiff is a Georgia corporation which is the named insured on the Policy at issue, with

its principal place of business in Georgia.

2.

Upon information and belief, Defendant is a foreign insurance company, registered to

transact business in, and in fact transacts business in, the State of Georgia. Defendant is in the

business of insuring risks and properties located throughout the United States, including

Georgia. Defendant maintains an office at 1201 Peachtree Street NE, Atlanta, GA 30361 where it

may be served with process through its registered agent, Ashley Hasty c/o CT Corporation System, as identified by the state of Georgia Secretary of State registry.

## JURISDICTION AND VENUE

3.

This Court has subject matter jurisdiction over this action for breach of contract and bad faith denial of insurance claim, and the Court has personal jurisdiction over Defendant because Defendant is transacting business and insuring properties in the State of Georgia, and has appointed a registered agent for service of process in Georgia pursuant to O.C.G.A. § 33-4-1 and O.C.G.A. § 33-4-4.

4.

Venue is proper in this Court because Defendant is transacting business, executing policies, and insuring properties in Fulton County pursuant O.C.G.A. § 33-4-1, O.C.G.A. § 33-4-4.

5.

In addition, by virtue of the express terms of the insurance policy at issue, Defendant has consented to jurisdiction and venue of this Court.

## THE POLICY

6.

In consideration of the premiums paid to Defendant by the Plaintiff, Defendant issued its Policy No. MAC 0323134 06 (the "Policy"). A similar copy of the policy is attached hereto as Exhibit "A." The Policy insures against property damage to Plaintiff's property (the "Property" or the "insured property"), and the Policy likewise insures against loss of severe storm damage. Specifically, the Policy provides coverage for "Commercial property including attached structures" and "Business personal property owned or used by the insured" with a deductible of $5,000.00 per occurrence. See Exhibit "A".

2

7.

The Policy covers property repairs on a full replacement cost basis, "the whole amount of loss for property covered." See Exhibit "A". The Policy is an all-perils policy providing coverage for all "sudden and accidental direct physical loss to property". See Exhibit "A".

8.

The Policy covers various types of expenses, including mitigating expenses for the reasonable and necessary costs incurred for temporary repairs to protect covered property from further imminent covered loss. See Exhibit "A."

## STORM DAMAGE TO THE INSURED PROPERTY

9.

On, or about July 21, 2018, a severe storm caused direct physical loss of, or damage to, the Plaintiff's property. The Policy was in effect at the time of the above-referenced storm.

10.

Plaintiff promptly and timely notified Defendant of the storm damage to its property as a result of the severe storm, and made a claim pursuant to the Policy. As a result, Defendant assigned Joel Steber ("Steber") to investigate Plaintiff's claim for loss of damage. Steber was authorized as Defendant's representative and agent for purposes of the storm-related claim.

11.

At all times, Plaintiff made itself and its property available to, and fully cooperated with the Defendant and its representative and agent to inspect and investigate the damages caused by the storm.

12.

Defendant, through its authorized representative and agent, Steber, performed a site inspection of Plaintiff's property.

3

13.

Defendant's authorized representative and agent, Steber, incurred the duty of acting with due diligence in achieving a proper disposition of the Plaintiff's claim when he undertook the handling of the disposition of the claim.

14.

Defendant, through its authorized representative and agent, Steber, grossly underestimated the scope of damages sustained to the Plaintiff's property as a result of the severe storm event. Defendant failed to properly investigate the damages and estimated Plaintiff's loss to be $17,609.85. Plaintiff's deductible is $5,000.00 per occurrence; thus, after the deductible and depreciation Plaintiff was due $12,609.85. A true and accurate copy of the Defendant's estimate is attached hereto as Exhibit "B."

15.

As a result of Defendant's gross underestimation, Plaintiff requested multiple times that Defendant reconsider its position regarding Defendant's estimate. Defendant refused to comply with the Plaintiff's requests and continued to frivolously and baselessly deny any additional payment on Plaintiff's claim. Furthermore, the Defendant continued to ignore the opinions of the Plaintiff's experts as to the amount of damage and the amount it will cost the Plaintiff in order to be placed in the same position they were in prior to the storm.

16.

Plaintiff drafted an estimate of repairs for **$428,092.10**, which are the result of the severe weather event on July 21, 2018. The Plaintiff's estimate of repairs is attached hereto as Exhibit "C."

17.

Defendant did not act fairly and honestly toward the Plaintiff with due regard to the Plaintiff's claim when the Defendant failed to compensate the Plaintiff for its damages in direct breach of the terms and conditions of the Policy when under all of the circumstances, it could and should have done so, had it acted fairly and honestly toward the Plaintiff, and with due regard for its interests.

18.

Plaintiff has fulfilled all conditions precedent and contractual obligations under the Policy prior to this lawsuit, or the same were waived.

19.

There exists a genuine, justifiable controversy between the Plaintiff and Defendant as to whether Defendant is responsible for coverage for the replacement cost of the actual physical damage to Plaintiff's property caused by the severe storm that occurred on July 21, 2018. Plaintiff has exhausted every reasonable means possible to resolve this dispute with the Defendant. With no other option, Plaintiff was constrained to hire legal counsel, incurring additional expenses, and file this lawsuit.

20.

Plaintiff has suffered physical damage to its property in an amount to be determined at trial.

## COUNT I: BREACH OF CONTRACT

21.

Plaintiff adopts, re-alleges, and incorporate its allegations set forth in Paragraphs 1-20 of this Complaint as if fully set forth herein.

5

22.

Plaintiff has performed all conditions to the Defendant's obligation to perform under the Policy, including without limitation, the timely payment of premiums, timely notice of the claim, mitigated the property, and or the Defendant has waived any and all other conditions.

23.

Defendant is required to compensate the Plaintiff for all direct physical losses under the terms of the Policy.

24.

Despite Plaintiff's active policy in place, Defendant has frivolously and baselessly failed, and refused to pay Plaintiff's claim under the terms of the Policy, causing further delay in restoring Plaintiff's property to its pre-loss condition.

25.

Defendant has failed to act in good faith and fair dealing under the terms of the Policy by refusing to properly investigate and pay Plaintiff's claim according to the terms of the Policy.

26.

Defendant has used the tactic of denying compensation to the Plaintiff for its covered losses that were sustained due to the severe storm. Further, Defendant has used the tactic of delaying payment to the Plaintiff in an effort to misrepresent the language of the Policy.

27.

As a result of the Defendant's tactic of denying and delaying Plaintiff's claim, the Plaintiff has sustained covered losses from direct physical damage to the insured property in an amount to be determined at trial. In addition, Plaintiff has further covered losses from mitigation and temporary repairs in an amount to be determined at trial.

28.

As a direct result of Defendant's breaches of its respective insurance contract, Plaintiff has been damaged and continues to suffer significant damages.

29.

All of the foregoing conduct constitutes a breach of contract that has resulted in damages to the Plaintiff.

30.

**WHEREFORE,** Plaintiff prays for this Court to enter an award, in Plaintiff's favor, of compensatory damages, attorneys' fees, pre- and post-judgment interest, and such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

31.

Plaintiff requests a trial by Jury on all counts of the Complaint.

## PRAYER FOR RELIEF

32.

**WHEREFORE,** Plaintiff request that after due proceedings are had, all appropriate penalties be assessed against the Defendant and that the Plaintiff receive any and all damages at law to which he is justly entitled, and thus prays for judgment against the Defendant, as follows:

a. That this Court grant judgment in favor of the Plaintiff and against Defendant in an amount to be determined at trial for breach of insurance contract.

b. Compensatory damages, including all damages to the Plaintiff by the Defendant and any resulting expenses and temporary repairs.

c. Pre- and post-judgment interest in the maximum amount allowed by law;

d. All statutory penalties;

7

e. Any and all applicable multipliers; and,

f. Any and all other relief that the Court may deem just and proper, whether such relief sounds in law or equity.

Dated, this 10th day of May, 2 0 2 1.

RESPECTFULLY SUBMITTED,

For: The Huggins Law Firm, LLC

J. Remington Huggins, Esq.
Georgia Bar No.: 348736
Michael D. Turner, Esq.
Georgia Bar No.: 216414
Foster L. Peebles, Esq.
Georgia Bar No.: 410852
Attorneys for the Plaintiff
110 Norcross Street
Roswell, GA 30075
(o) (770) 913-6229
(e) remington@lawhuggins.com
(e) mdturner@lawhuggins.com
(e) fpeebles@lawhuggins.com

8

# EXHIBIT A

## Your Great American Insurance Policy℠

301 E. Fourth St., Cincinnati, OH 45202



**Property & Inland Marine**

800-545-4269

GAIG.com

© 2017 Great American Insurance Company

0790-C (10/17)

# Policyholder Notice Regarding Claims

## Claims Handling Procedures

An important value of your insurance coverage is the insurer's ability and reputation for responding and handling a claim. Great American's Property & Inland Marine's Division is dedicated to offering excellent claims service to insureds.

Notices of each incident, claim, or suit must be immediately sent to the address, fax or email listed below.

## Claims Mailing Address

Great American Insurance Group
301 E. Fourth Street, 21st Floor
Cincinnati, OH 45202-4201
Toll-Free: 800-584-0835
Fax: 800-811-4751
pimclaims@gaig.com

Great American Insurance Group
Property & Inland Marine Claims
P.O. Box 5440
Cincinnati, OH 45201-5440

## Property & Inland Marine After Hours Claim Services (USA only)

Claims Alert Hotline
Crawford and Company
866-354-0148 - Code 15797

## After Hours Emergency Restorations/Clean-Up (USA only)

ServiceMaster
800-737-7663

A Claims Department representative will contact you directly to confirm receipt of the notice and to discuss further details of handling the claim.

## Built on Relationships. Focused on Solutions.®

Service Minded. Solution Driven. Specialty Focused.

That's what we are, and what you can count on to help write more business. We're not your run-of-the-mill insurance company - we're one of the few carriers with a dedicated Property & Inland Marine Division, and in the industry segments we cover, we believe in our experience, so you'll work with individuals who only write these coverages and know them inside and out.

Great American Insurance Group, 301 E. Fourth St., Cincinnati, OH 45202. Policies are underwritten by Great American Insurance Company, Great American Assurance Company, Great American Alliance Insurance Company and Great American Insurance Company of New York, authorized insurers in all 50 states and the DC. The Great American Insurance Group eagle logo and the word marks Great American®, Great American Insurance Group®, and Built on Relationships. Focused on Solutions.® are registered service marks of Great American Insurance Company.

5586-PIM (01/18)

©2018 Great American Insurance Company. All rights reserved.

## POLICYHOLDER NOTICE

### CERTAIN COMPUTER-RELATED LOSSES

**(Applicable to Commercial Fire, Commercial Inland Marine, and Crime Policies)**

**NO COVERAGE IS PROVIDED BY THIS POLICYHOLDER NOTICE NOR CAN IT BE CONSTRUED TO REPLACE ANY PROVISION OF YOUR POLICY. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE FOR COMPLETE INFORMATION ON THE COVERAGES YOU ARE PROVIDED. IF THERE IS ANY CONFLICT BETWEEN THE POLICY AND THIS SUMMARY, THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

An exclusion has been added to your policy to explicitly state that coverage is not provided for loss caused by a computer's inability, or that of computerized or other electronic equipment, to properly recognize a particular date or time. An example of this is a loss caused by the inability of the computer to recognize the year 2000 (Y2K). However, coverage is provided under certain circumstances: if the computer's inability to recognize a date or time results in a covered cause of loss - - for example, fire - - the loss resulting from that fire will be covered.

SDM-329 (Ed. 08/15)

104131

IL 70 01 (Ed. 10 07)

| | |
|---|---|
| **Policy No.** | MAC 0323134 07 00 |
| Renewal Of | MAC 0323134 06 |

## POLICY COMMON DECLARATIONS

| | |
|---|---|
| **NAMED INSURED AND ADDRESS:** | Fairington Park Condominium Association<br>c/o POSolutions, Inc.<br>6713 Church Street<br>Douglasville, GA 30134 |

| | |
|---|---|
| **IN RETURN FOR PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.** | **AGENT'S NAME AND ADDRESS:**<br>AmWINS Brokerage of the Carolinas, LLC<br>PO Box 221229<br>Charlotte, NC 28222 |

Insurance is afforded by the Company named below, a Capital Stock Corporation:
Great American Insurance Company

**POLICY PERIOD:**   From   08/15/2019   To   08/15/2020
12:01 A.M. Standard Time at the address of the Named Insured

---

This policy consists of the following Coverage Parts for which a premium is indicated. This premium may be subject to adjustment.

| | | **Premium** |
|---|---|---|
| Commercial Property | $ | 38,671.00 |
| Commercial General Liability | | |
| Commercial Crime and Fidelity | | |
| Commercial Inland Marine | | |
| Commercial Equipment Breakdown | | |
| Commercial Auto | | |
| Commercial Umbrella | | |
| **Total** | $ | 38,671.00 |

| | |
|---|---|
| **FORMS AND ENDORSEMENTS** applicable to all Coverage Parts and made part of this Policy at time of issue are listed on the attached Forms and Endorsements Schedule IL 88 01 (11/85). | **POLICY ALTERNATE MAILING ADDRESS:** |

IL 70 01 (Ed. 10/07)                    (Page 1 of 1)

IL 88 01 (Ed. 11 85)

# FORMS AND ENDORSEMENTS SCHEDULE

It is hereby understood and agreed the following forms and endorsements are attached to and are a part of this policy:

| | Form and Edition | | Date Added * or Date Deleted | Form Description |
|---|---|---|---|---|
| 1. | IL7001 | 10-07 | | BusinessPRO Policy Common Declarations |
| 2. | IL0017 | 11-98 | | Common Policy Conditions |
| 3. | IL0262 | 02-15 | | Georgia Changes - Cancellation And Nonrenewal |
| 4. | IL0935 | 07-02 | | Exclusion of Certain Computer-Related Losses |
| 5. | IL0952 | 01-15 | | Cap On Losses From Certified Acts Of Terrorism |
| 6. | IL7268 | 09-09 | | In Witness Clause |
| 7. | IL7273 | 08-08 | | Loss Prevention Services |
| 8. | IL7324 | 08-12 | | Economic And Trade Sanctions Clause |
| 9. | IL7368 | 04-15 | | Disclosure Pursuant To Terrorism Risk Insurance Act |

* If not at inception

IL 00 17
(Ed. 11 98)

## COMMON POLICY CONDITIONS

All Coverage Parts included in this Policy are subject to the following conditions.

### A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this Policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this Policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this Policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

### B. Changes

This Policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this Policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this Policy.

### C. Examination of Your Books and Records

We may examine and audit your books and records as they relate to this Policy at any time during the policy period and up to three years afterward.

### D. Inspections and Surveys

1. We have the right to:

   a. make inspections and surveys at any time;

   b. give you reports on the conditions we find; and

   c. recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. are safe or healthful; or

   b. comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

Copyright, ISO Properties, Inc., 1998

## E. Premiums

The first Named Insured shown in the Declarations:

1. is responsible for the payment of all premiums; and

2. will be the payee for any return premiums we pay.

## F. Transfer of Your Rights and Duties Under this Policy

Your rights and duties under this Policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, ISO Properties, Inc., 1998
IL 00 17 (Ed. 11/98) XS

IL 02 62 (Ed. 02 15)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## GEORGIA CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **A.1.** of the **Cancellation** Common Policy Condition is replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this Policy by mailing or delivering to us advance written notice of cancellation stating a future date on which the Policy is to be cancelled, subject to the following:

**a.** If only the interest of the first Named Insured is affected, the effective date of cancellation will be either the date we receive notice from the first Named Insured or the date specified in the notice, whichever is later. However, upon receiving a written notice of cancellation from the first Named Insured, we may waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the first Named Insured.

**b.** If by statute, regulation or contract this Policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days' notice to the first Named Insured

and the third party as soon as practicable after receiving the first Named Insured's request for cancellation.

Our notice will state the effective date of cancellation, which will be the later of the following:

**(1)** 10 days from the date of mailing or delivering our notice; or

**(2)** the effective date of cancellation stated in the first Named Insured's notice to us.

**B.** Paragraph **A.5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5. Premium Refund**

**a.** If this Policy is cancelled, we will send the first Named Insured any premium refund due.

**b.** If we cancel, the refund will be pro rata, except as provided in **c.** below.

**c.** If the cancellation results from failure of the first Named Insured to pay, when due, any premium to us or any amount, when due, under a premium finance agreement, then the refund may be less than pro rata. Calculation

Copyright, Insurance Services Office, Inc., 2014

(Page 1 of 3)

IL 02 62 (Ed. 02/15)

of the return premium at less than pro rata represents a penalty charged on unearned premium.

**d.** If the first Named Insured cancels, the refund may be less than pro rata.

**e.** The cancellation will be effective even if we have not made or offered a refund.

**C.** The following is added to the **Cancellation** Common Policy Condition and supersedes any other provisions to the contrary:

If we decide to:

**1.** cancel or nonrenew this Policy; or

**2.** increase current policy premium by more than 15% (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverages); or

**3.** change any policy provision which would limit or restrict coverage;

then:

We will mail or deliver notice of our action (including the dollar amount of any increase in renewal premium of more than 15%) to the first Named Insured and lienholder, if any, at the last mailing address known to us. Except as applicable as described in paragraph **D.** or **E.** below, we will mail or deliver notice at least:

**a.** 10 days before the effective date of cancellation if this Policy has been in effect less than 60 days or if we cancel for nonpayment of premium; or

**b.** 45 days before the effective date of cancellation if this Policy has been in effect 60 or more days and we cancel for a reason other than nonpayment of premium; or

**c.** 45 days before the expiration date of this Policy if we decide to nonrenew, increase the premium or limit or restrict coverage.

**D.** The following provisions apply to insurance covering residential real property only provided under the:

**Capital Assets Program (Output Policy) Coverage Part;**
**Commercial Property Coverage Part;**
**Farm Coverage Part;**

if the Named Insured is a natural person.

With respect to such insurance, the following is added to the **Cancellation** Common Policy Condition and supersedes any provisions to the contrary except as applicable as described in paragraph **E.**:

**1.** When this Policy has been in effect for 60 days or less and is not a renewal with us, we may cancel for any reason by notifying the first Named Insured at least 10 days before the date cancellation takes effect.

**2.** When this Policy has been in effect for more than 60 days, or at any time if it is a renewal with us, we may cancel for one or more of the following reasons:

**a.** nonpayment of premium, whether payable to us or to our agent;

**b.** upon discovery of fraud, concealment of a material fact, or material misrepresentation made by or with the knowledge of any person insured under this Policy in obtaining this Policy, continuing this Policy or presenting a claim under this Policy;

**c.** upon the occurrence of a change in the risk which substantially increases any hazard insured against; or

**d.** upon the violation of any of the material terms or conditions of this Policy by any person insured under this Policy.

We may cancel by providing notice to the first Named Insured at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 45 days before the effective date of cancellation if we cancel for any of the reasons listed in **b., c.** or **d.** above.

Copyright, Insurance Services Office, Inc., 2014

**E.** With respect to a policy that is written to permit an audit, the following is added to the **Cancellation** Common Policy Condition:

If you fail to submit to or allow an audit for the current or most recently expired term, we may cancel this Policy subject to the following:

1. We will make two documented efforts to send you and your agent notification of potential cancellation. After the second notice has been sent, we have the right to cancel this Policy by mailing or delivering a written notice of cancellation to the first Named Insured at least 10 days before the effective date of cancellation, but not within 20 days of the first documented effort.

2. If we cancel this Policy based on your failure to submit to or allow an audit, we will send the written notice of cancellation to the first Named Insured at the last known mailing address by certified mail or statutory overnight delivery with return receipt requested.

Copyright, Insurance Services Office, Inc., 2014
(Page 3 of 3)

IL 02 63 (Ed. 02/15)

**IL 09 35**
(Ed. 07 02)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES**

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** We will not pay for the loss ("loss") or damage caused directly or indirectly by the following. Such loss ("loss") or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss ("loss") or damage.

  **1.** The failure, malfunction or inadequacy of:

  **a.** any of the following, whether belonging to any Insured or to others:

    **(1)** computer hardware, including microprocessors;

    **(2)** computer application software;

    **(3)** computer operating systems and related software;

    **(4)** computer networks;

    **(5)** microprocessors (computer chips) not part of any computer system; or

    **(6)** any other computerized or electronic equipment or components; or

  **b.** any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **A.1.a.** of this endorsement;

  due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

  **2.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **A.1.** of this endorsement.

**B.** If an excluded Cause of Loss as described in Paragraph **A.** of this endorsement results:

  **1.** in a Covered Cause of Loss under the Crime and Fidelity Coverage Part, the Commercial Inland Marine Coverage Part or the Standard Property Policy; or

  **2.** under the Commercial Property Coverage Part:

    **a.** in a "Specified Cause of Loss," or in elevator collision resulting from mechanical breakdown, under the Causes of Loss - Special Form; or

    **b.** in a Covered Cause of Loss under the Causes of Loss - Basic Form or the Causes of Loss - Broad Form;

  we will pay only for the loss ("loss") or damage caused by such "Specified Cause of Loss," elevator collision, or Covered Cause of Loss.

**C.** We will not pay for repair, replacement or modification of any items in Paragraphs **A.1.a.** and **A.1.b.** of this endorsement to correct any deficiencies or change any features.

Copyright, ISO Properties, Inc., 2001

IL 09 35 (Ed. 07/02) XS

104131

IL 09 52 (Ed. 01/15)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

### A. Cap On Certified Terrorism Losses

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

### B. Application Of Exclusions

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War and Military Action Exclusion.

© Insurance Services Office, Inc., 2015

IL 09 52 (Ed. 01/15)

104131

IL 72 68 (Ed. 09 09)

## IN WITNESS CLAUSE

In Witness Whereof, we have caused this Policy to be executed and attested, and, if required by state law, this Policy shall not be valid unless countersigned by our authorized representative.

PRESIDENT

SECRETARY

Copyright Great American Insurance Co., 2009

IL 72 68 (Ed. 09/09)                                          (Page 1 of 1)

IL 72 73
(Ed. 08 08)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## LOSS PREVENTION SERVICES

This endorsement modifies insurance provided under the following:

COMMON POLICY CONDITIONS

The following is added to the **Common Policy Conditions**

**G. Loss Prevention Services**

At our cost, we may provide or recommend a broad range of loss prevention services designed to improve the acceptability of an insured. These services may require your cooperation to make them effective.

We provide these services based on need as indicated by the size, hazard and experience of your operation. We may elect to provide these services through another entity.

In addition to inspections and surveys, referenced in **D. Inspections and Surveys,** these services may include, but are not limited to, safety and prevention training, consultations, safety devices, health screenings and analyses of accident causes.

We are not obligated to provide any loss prevention services and any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

**a.** are safe or healthful; or

**b.** comply with laws, regulations, codes or standards.

This endorsement does not change any other provision of the Policy.

IL 73 24 (Ed. 08 12)

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.**

## ECONOMIC AND TRADE SANCTIONS CLAUSE

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance.

IL 73 24 (Ed. 08/12)

104131

IL 73 68 (Ed. 04/15)

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

## DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**Schedule**

| Schedule - Part I |
|---|

Terrorism Premium (Certified Acts) $ 0.00

This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies): MAC 0323134 07 00

Additional information, if any, concerning the terrorism premium:

| Schedule - Part II |
|---|

| Federal share of terrorism losses | 85% Year: 2015 |
|---|---|
| (Refer to Paragraph **B.** in this endorsement.) | 84% Year: 2016 |
| | 83% Year: 2017 |
| | 82% Year: 2018 |
| | 81% Year: 2019 |
| | 80% Year: 2020 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

### A. Disclosure of Premium

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

### B. Disclosure of Federal Participation in Payment of Terrorism Losses

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part II of the Schedule of this endorsement) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

### C. Cap on Insurer Participation in Payment of Terrorism Losses

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

SB 82 13 (Ed. 02/15)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## GEORGIA CHANGES

This endorsement modifies insurance provided under the following:

> SELECT BUSINESS BUILDING AND PERSONAL PROPERTY COVERAGE FORM
> SELECT BUSINESS POLICY CONDITIONS

**A.** The following exclusion and related provisions are added to paragraph **C.2. Exclusions** in the **Select Business Building and Personal Property Coverage Form**

  **1.** We will not pay for loss or damage arising out of any act committed:

   **a.** by or at the direction of any insured; and

   **b.** with the intent to cause a loss.

  **2.** However, this exclusion will not apply to deny coverage to an innocent co-insured, provided the loss:

   **a.** is otherwise covered under this Coverage Part; and

   **b.** arose out of an act of family violence by an insured against whom a family violence complaint is brought for such act.

  **3.** If we pay a claim pursuant to paragraph **A.2.**, our payment to the Insured is limited to that Insured's legal interest in the property less any payments we first made to a mortgageholder or other party with a legal secured interest in the property. In no event will we pay more than the Limit of Insurance.

**B.** The following explanation is added with respect to application of the exclusion of "Fungus," Wet Rot, Dry Rot and Bacteria and the Limited Coverage of the same title:

  With respect to the portion of Covered Property that would still have required repair or replacement had there been no "fungus,"

wet or dry rot or bacteria, this exclusion and Limited Coverage will not serve to limit the amount of recovery for such repair or replacement.

However, the exclusion and Limited Coverage shall continue to apply to:

  **1.** the cost to treat, contain, remove or dispose of "fungus," wet rot, dry rot or bacteria beyond that which is required to repair or replace Covered Property;

  **2.** the cost of testing as described in the Limited Coverage; and

  **3.** any increase in loss under Business Income and/or Extra Expense Forms resulting from **1.** or **2.** above.

Regardless of whether the Exclusion and Limited Coverage apply to a loss, the Limit of Insurance on Covered Property is not increased. The maximum recoverable, for the total of the cost to repair or replace Covered Property and any additional covered cost to treat, contain, remove, dispose of or test for "fungus," wet or dry rot or bacteria, is the applicable Limit of Insurance on the affected Covered Property.

**C.** This paragraph **C.** applies to the following:

> SELECT BUSINESS BUILDING AND PERSONAL PROPERTY COVERAGE FORM
> SELECT BUSINESS POLICY CONDITIONS

Paragraph **1.** of the **Loss Payment** condition is replaced by the following:

1. In the event of loss or damage covered by this Coverage Form, at our option we will either:

   a. repair, rebuild or replace the property with other property of like kind and quality, or pay the cost of such repair, rebuilding or replacement, as limited by paragraph **2.**, of this Loss Payment Condition and any other applicable policy provisions, such as the Limit of Insurance provision, the Valuation Condition or any provision which amends or supersedes the Valuation Condition; or

   b. take all or any part of the property at an agreed or appraised value.

With respect to paragraph **1,a.**, this Policy covers only the cost of repair, rebuilding or replacement. Such cost does not include recovery of, and therefore this Policy does not pay any compensation for, an actual or perceived reduction in the market value of any property. But if the property that has sustained loss or damage is subject to an endorsement which explicitly addresses market value, then that endorsement will apply to such property in accordance with its terms.

D. The **Select Business Policy Conditions** is changed as follows:

1. **General Conditions**, Paragraph **A.** is replaced by the following:

   A. **Concealment, Misrepresentation or Fraud**

   We do not provide coverage in any case of fraud by you as it relates to this Coverage Part at any time. We also do not provide coverage if you or any other insured, at any time, misrepresent or intentionally conceal a material fact concerning:

      1. this Coverage Part;

      2. the Covered Property;

      3. your interest in the Covered Property;

      4. a claim filed under this Coverage Part.

2. In the **Vacancy** Loss Condition, subparagraph **b.** of Paragraph **2. Vacancy Provisions** is deleted.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

104131

SB 86 90 (Ed. 11/15)

**Policy No.**     MAC 0323134 07 00

## SELECT BUSINESS POLICY

| **NAMED INSURED:** Fairington Park Condominium Association | **POLICY PERIOD:** 08/15/2019 **to** 08/15/2020 |
|---|---|

| **TOTAL PROPERTY PREMIUM:** | $   38,671.00 |
|---|---|

**DEDUCTIBLE AMOUNTS:**

$     5,000   In transit

$     5,000   All other

**NOT AT A DESCRIBED LOCATION:**

Insurance is provided only for those coverages for which a Limit of Insurance has been inserted:

|  | **Newly Acquired or Constructed Locations** | | **At any other location** | | **In transit, in or on any one conveyance unit** | |
|---|---|---|---|---|---|---|
| Building | $ | 500,000 | $ | 50,000 | NOT COVERED | |
| Business Personal Property | $ | 250,000 | $ | 50,000 | $ | 5,000 |
| Business Income | $ | 100,000 | $ | 20,000 | NOT COVERED | |
| Extra Expense | $ | 10,000 | $ | 10,000 | NOT COVERED | |

**DESCRIBED LOCATION(S):**

At the locations specified below, insurance is provided for those coverages for which a Limit of Insurance has been inserted:

Location:          Building:          Address:
                            **See SB8118**

| **BUILDING:** | Limit $ | Valuation | |
|---|---|---|---|
| **BUSINESS PERSONAL PROPERTY:** | | Limit  $ | Valuation |
| **BUSINESS INCOME INCLUDING EXTRA EXPENSE:** | | Limit  $ | |

**MORTGAGEHOLDER:**

## SUPPLEMENTARY DECLARATIONS

A. The coverages below apply per location. If you purchase additional limits for any of these coverages at a specific location, the Limits of Insurance shown at that location will reflect your total limits, including the Limits of Insurance shown below. If there is no separate deductible indicated, the Property Deductible will apply.

| | | |
|---|---|---|
| $ | 5,000 | Brands and Labels Expense |
| $ | 5,000 | Claims Data Preparation Expense |
| $ | 2,500 | Consequential Loss |
| $ | 10,000 | Debris Removal |
| $ | 5,000 | Fire Department Service Charge |
| $ | 2,500 | Fire Protection Device Recharge |
| $ | 5,000 | Personal Effects |
| $ | 10,000 | Pollutant Clean Up and Removal |
| $ | 5,000 | Reward Payment |

B. When a Limit o f Insurance is shown in the Declarations for Business Income Coverage, the following coverages apply at each described location:

| | |
|---|---|
| 4 Weeks | Civil Authority |
| 90 Days | Extended Business Income |

**FORMS AND ENDORSEMENTS** applicable to this Coverage Part and made a part of this Policy at the time of issue are listed on the attached Forms and Endorsements Schedule, SB 88 01.

104131

SB 81 18 (Ed. 05/16)

## SELECT BUSINESS POLICY
## SCHEDULE OF ADDITIONAL PROPERTY LOCATIONS

**Described Locations:**    At the locations specified below, insurance is provided only for those coverages for which a Limit of Insurance has been inserted.

### Schedule of Locations

| Loc No. | Bldg. No. | Address | C | V | Coin/ Bl Opt | Limit of Insurance |
|---------|-----------|---------|---|---|--------------|---------------------|
| | | Ordinance or Law | | | | |
| | | Cov. A Undamaged Portion - Included in Building Limit Cov. B Demolition Costs - $100,000 Cov. C Increased Cost of Construction - $100,000 | | | | |
| 1 | 1 | 1101-1104 Par Three Way, 1201-1204, Lithonia, GA 30038 Condo | BLDG | RC | NONE | $ 1,082,995 |
| 2 | 1 | 2101-2104 Par Three Way, 2201-2204, 2302-2304, Lithonia, GA 30038 Condo | BLDG | RC | NONE | $ 1,598,360 |
| 3 | 1 | 3101-3104 Par Three Way, 3201-3204, 3301-3304, Lithonia, GA 30038 Condo | BLDG | RC | NONE | $ 1,598,360 |
| 4 | 1 | 4101-4104 Par Three Way, 4201-4204, 4301-4304, Lithonia, GA 30038 Condo | BLDG | RC | NONE | $ 1,598,360 |
| 5 | 1 | 5101-5104 Par Three Court, 5201-5204, 5301-5304, Lithonia, GA 30038 Condo | BLDG | RC | NONE | $ 1,598,360 |
| 6 | 1 | 6101-6104 Par Three Court, 6201-6204, 6301-6304, Lithonia, GA 30038 Condo | BLDG | RC | NONE | $ 1,598,360 |
| 7 | 1 | 7101-7104 Par Four Way, 7201-7204, 7301-7304, Lithonia, GA 30038 Condo | BLDG | RC | NONE | $ 1,598,360 |

| Loc No. | Bldg. No. | Address | C | V | Coin/ BI Opt | | Limit of Insurance |
|---------|-----------|---------|---|---|--------------|---|-----------|
| 8 | 1 | 8101-8104 Par Four Way, 8201-8204, 8301-8304, Lithonia, GA 30038 Condo | BLDG | RC | NONE | $ | 1,598,360 |
| 9 | 1 | 3201-3223 Fairington Way,  Lithonia, GA 30038 Condo | BLDG | RC | NONE | $ | 1,598,360 |
| 10 | 1 | 3225-3247 Fairington Way,  Lithonia, GA 30038 Condo | BLDG | RC | NONE | $ | 1,598,360 |

For additional locations, if any, see the Select Business Policy Schedule of Additional Property Locations attached to this Coverage Part.

**All other terms and conditions of this Policy remain unchanged.**

SB 81 39 (Ed. 02/16)

## SELECT BUSINESS POLICY
## DECLARATIONS PAGE AND LOCATION SCHEDULE ABBREVIATIONS KEY

| <u>C</u> | Coverage Type | <u>BI OPTS</u> | Business Income Coverage Options |
|---|---|---|---|
| <u>V</u> | Valuation | <u>LIMIT</u> | Limit of Insurance |
| <u>COIN</u> | Coinsurance | <u>INCL BLNKT</u> | Include in Blanket |

**C - COVERAGE TYPES**

| | |
|---|---|
| BLDG | Building |
| BPP | Business Personal Property |
| STK | Stock |
| PPO | Personal Property of Others |
| BI & EE | Business Income with Extra Expense |
| BI | Business Income without Extra Expense |
| EE | Extra Expense Only |

**V - VALUATION**

| | |
|---|---|
| RC | Replacement Cost |
| ACV | Actual Cash Value |
| FRC | Functional Replacement Cost |

**C - COINSURANCE**

| | |
|---|---|
| 80 | 80% Coinsurance |
| 90 | 90% Coinsurance |
| 100 | 100% Coinsurance |
| AV | Agreed Value |
| NONE | No Coinsurance |

**BI OPTS - BUSINESS INCOME COVERAGE OPTIONS**

| | |
|---|---|
| ALS 12 | Actual Loss Sustained Up To 12 Months |
| ALS | Actual Loss Sustained |
| AV | Agreed Value |
| MPI | Maximum Period of Indemnity |
| ML 1/3 | Monthly Limit of Indemnity 1/3 |
| ML 1/4 | Monthly Limit of Indemnity 1/4 |
| ML 1/6 | Monthly Limit of Indemnity 1/6 |
| 50 | 50% Coinsurance |
| 60 | 60% Coinsurance |
| 70 | 70% Coinsurance |
| 80 | 80% Coinsurance |
| 90 | 90% Coinsurance |
| 100 | 100% Coinsurance |
| 125 | 125% Coinsurance |
| EPI 90 | 90 Day Extended Period of Indemnity |
| EPI 120 | 120 Day Extended Period of Indemnity |
| EPI 150 | 150 Day Extended Period of Indemnity |
| EPI 180 | 180 Day Extended Period of Indemnity |
| EPI 270 | 270 Day Extended Period of Indemnity |
| EPI 365 | 365 Day Extended Period of Indemnity |
| EPI 450 | 450 Day Extended Period of Indemnity |
| EPI 540 | 540 Day Extended Period of Indemnity |
| EPI 630 | 630 Day Extended Period of Indemnity |
| EPI 720 | 720 Day Extended Period of Indemnity |
| 100/100/100 | Extra Expense Only Monthly Percent 100/100/100 |
| 40/80/100 | Extra Expense Only Monthly Percent 40/80/100 |
| 35/70/100 | Extra Expense Only Montly Percent 35/70/100 |

**All other policy terms and conditions remain unchanged.**

104131

SB 88 01 (Ed. 01 88)

# SELECT BUSINESS POLICY FORMS AND ENDORSEMENTS EXTENSION SCHEDULE

It is hereby understood and agreed the following forms and endorsements are attached to and are a part of this policy:

| | Form and Edition | | Date Added * or Date Deleted | Form Description |
|---|---|---|---|---|
| 1. | SB8213 | 02-15 | | Georgia Changes |
| 2. | SB8690 | 11-15 | | Select Business Policy |
| 3. | SB8118 | 05-16 | | Select Business Policy Schedule of Additional Property Locations |
| 4. | SB8139 | 02-16 | | Select Business Policy Declarations Page And Location Schedule Abbreviations Key |
| 5. | SB8601 | 02-15 | | Select Business Policy Conditions |
| 6. | SB8602 | 02-15 | | Select Business Policy Building and Personal Property Coverage Form |
| 7. | SB8607 | 02-15 | | Select Business Policy Extra Expense Coverage Form |
| 8. | SB8802 | 01-88 | | Select Business Policy - General Endorsement - Water Damage Deductible |
| 9. | SB8172 | 06-13 | | Select Business Policy - Exclusion Of Loss Due To Virus Or Bacteria |

* If not at inception

SB 86 01 (Ed. 02 15)

## SELECT BUSINESS POLICY CONDITIONS

This Coverage Part is subject to the following conditions:

### General Conditions

#### A. Concealment, Misrepresentation or Fraud

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, misrepresent or intentionally conceal a material fact concerning:

1. this Coverage Part;

2. the Covered Property;

3. your interest in the Covered Property; or

4. a claim under this Coverage Part.

#### B. Control of a Property

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

#### C. Insurance Under Two or More Coverages

If two or more of this Policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

#### D. Legal Action Against Us

No one may bring a legal action against us under this Coverage Part unless:

1. there has been full compliance with all of the terms of this Coverage Part; and

2. the action is brought within 2 years after the date on which the direct physical loss or damage occurred.

#### E. Liberalization

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

#### F. No Benefit to Bailee

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

#### G. Other Insurance

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance or more than the actual amount of loss or damage.

## H. Policy Period, Coverage Territory

Under this Coverage Part:

1. We cover loss or damage commencing:

   a. during the policy period shown in the Declarations; and

   b. within the Coverage Territory.

2. The Coverage Territory is:

   a. the United States of America (including its territories and possessions);

   b. Puerto Rico; and

   c. Canada.

## I. Transfer of Rights of Recovery Against Others to Us

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.

2. After a loss to your Covered Property or Covered Income only if, at the time of loss, that party is one of the following:

   a. someone insured by this insurance;

   b. a business firm:

      (1) owned or controlled by you; or

      (2) that owns or controls you; or

   c. your tenant.

   This will not restrict your insurance.

## J. Mortgageholders

1. The term "mortgageholder" includes trustee.

2. We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

3. The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

4. If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

   a. pays any premium due under this Coverage Part if you have failed to do so;

   b. submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   c. has notified us if any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

   All of the terms of this Coverage Part will then apply directly to the mortgageholder.

5. If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

   a. the mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

   b. the mortgageholder's rights to recover the full amount of the mortgageholder's claim will not be impaired.

   At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

6. If we cancel this Policy, we will give written notice to the mortgageholder at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment or premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**7.** If we elect not to renew this Policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this Policy.

**Loss Conditions**

**A. Abandonment**

There can be no abandonment of any property to us.

**B. Appraisal**

If we and you disagree on the value of the property, the amount of Net Income and operating expense, or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property, the amount of Net Income and operating expense, or the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**1.** pay its chosen appraiser; and

**2.** bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

Neither the appraisers nor the umpire shall attempt to resolve any issue of insurance coverage, policy exclusions, compliance with the Policy terms and conditions, or any issues concerning the Limits of Insurance available under the Policy.

**C. Duties in the Event of Loss or Damage**

**1.** You must see that the following are done in the event of loss or damage to Covered Property:

**a.** Notify the police if a law may have been broken.

**b.** Give us prompt notice of the loss or damage. Include a description of the property involved.

**c.** As soon as possible, give us a description of how, when, and where the loss or damage occurred.

**d.** Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss, and keep a record of your expenses necessary to protect the Covered Property from such a loss, for consideration in the settlement of the claim. However, we will not pay for any subsequent loss or damage resulting from a Cause of Loss that is not a Covered Cause of Loss. Also, if feasible, set damaged property aside and in the best possible order, for examination.

**e.** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**f.** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**g.** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**h.** Cooperate with us in the investigation or settlement of the claim.

**i.** If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

**2.** We may examine any insured under oath while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

## D. Loss Payment

**1.** In the event of direct physical loss or damage covered by this Coverage Part, at our option, we will either:

    **a.** pay the value of lost or damaged property;

    **b.** pay the cost of repairing or replacing the lost or damaged property, subject to **2.** below;

    **c.** take all or any part of the property at an agreed or appraised value; or

    **d.** repair, rebuild or replace the property with other property of like kind and quality subject to **2.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the **Valuation** Condition in this Coverage Part or any applicable provision which amends or supersedes the **Valuation** Condition.

**2.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

**3.** The amount of Business Income loss will be determined based on:

    **a.** the Net Income of the business before the direct physical loss or damage occurred;

    **b.** the likely Net Income of the business if no physical loss or damage occurred but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

    **c.** the operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

    **d.** other relevant sources of information, including:

        **(1)** your financial records and accounting procedures;

        **(2)** bills, invoices and other vouchers; and

        **(3)** deeds, liens, or contracts.

**4.** The amount of Extra Expense will be determined based on:

    **a.** All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

        **(1)** the salvage value that remains of any property bought for temporary use during the "period of restoration," once "operations" are resumed; and

        **(2)** any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

    **b.** Necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

5. We will give notice of our intentions within 30 days after we receive the sworn statement of loss.

6. We will not pay you more than your financial interest in the Covered Property.

7. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

8. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

9. We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and;

    a. we have reached agreement with you on the amount of loss; or

    b. an appraisal award has been made.

10. A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and Co-insurance Conditions and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer of Rights of Recovery against Others to Us Condition in this Policy.

**E. Recovered Property**

1. If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

2. If branded or labeled merchandise that is Covered Property is damaged by a Covered Cause of Loss, we may take all or any part of the property at an agreed or appraised value. If so, you may, at your own expense:

    a. stamp "salvage" on the merchandise or its containers, if the stamp will not physically damage the merchandise; or

    b. remove the brands or labels, if doing so will not physically damage the merchandise. You must relabel the merchandise or its containers to comply with the law.

**F. Resumption of Operations**

1. We will reduce the amount of your:

    a. Business Income loss, other than Extra Expense, to the extent you can resume your "operations," in whole or in part by using damaged or undamaged property (including merchandise or stock) at the described location or elsewhere.

    b. Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

2. If you do not resume "operations," or do not resume "operations" as quickly as possible, we will pay losses based on the length of time it would have taken to resume operations as quickly as possible.

## G. Vacancy

### 1. Description of Terms

**a.** As used in the **Vacancy** Condition, the term building and the term vacant have the meaning set forth in **(1)** and **(2)** below:

**(1)** When this Policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means that unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(2)** When this Policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(a)** rented to a lessee or sublessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

**(b)** used by the building owner to conduct customary operations.

**b.** Buildings under construction or renovation are not considered vacant.

### 2. Vacancy Provisions

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**a.** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

**(1)** vandalism;

**(2)** sprinkler leakage, unless you have protected the system against freezing;

**(3)** building glass breakage;

**(4)** water damage;

**(5)** theft; or

**(6)** attempted theft.

**b.** With respect to Covered Causes of Loss other than those listed in **2.(a)(1)** through **2.(a)(6)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

## H. Valuation

**1.** If actual cash value is indicated in the Declarations as the method of valuation we will determine the value of Covered Property in the event of loss or damage as follows:

**a.** At actual cash value as of the time of loss or damage except as provided in **b.** through **g.** below.

**b.** If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement. The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property. However, the following property will be valued at the actual cash value, even when attached to the building:

**(1)** awnings or floor coverings;

**(2)** appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

**(3)** outdoor equipment or furniture.

**b.** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

c. "Finished stock" you have manufactured at the selling price, as if no loss or damage occurred, less discounts and expenses you otherwise would have had.

d. Glass at the cost of replacement with safety glazing material if required by law.

e. Tenant's Improvements and Betterments at:

(1) Actual cash value of the loss or damaged property if you make repairs promptly.

(2) A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

(a) multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

(b) divide the amount determined in (a) above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration date of the renewal option period will replace the expiration of the lease in this procedure.

(3) Nothing if others pay for repairs or replacement.

f. Exhibitions and displays at your cost.

g. Patterns, molds, models, and dies at replacement cost if actually replaced. Otherwise at actual cash value.

2. If replacement cost is indicated in the Declarations as the method of valuation we will determine the value of Covered Property in the event of loss or damage as follows:

a. At replacement cost (without deduction for depreciation) as of the time of loss or damage except as provided in b. through l. below:

b. "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

c. "Finished stock" you have manufactured at the selling price, as if no loss or damage occurred, less discounts and expenses you otherwise would have had.

d. Glass at the cost of replacement with safety glazing material if required by law.

e. Tenant's Improvements and Betterments at:

(1) Replacement cost of the loss or damaged property if you make repairs promptly.

(2) A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

(a) multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

(b) divide the amount determined in (a) above by the number of days from the installation of improvements to the expiration of the lease;

(c) if your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

(3) Nothing if others pay for repairs or replacement.

f. Valuable Papers and Records, including those which exist on electronic or magnetic media (other than prepackaged software programs), at the cost of:

(1) blank materials for reproducing the records; and

(2) labor to transcribe or copy the records when there is a duplicate.

g. Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac at actual cash value.

h. You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage that replacement cost coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

i. We will not pay on a replacement cost basis for any loss or damage:

(1) until the lost or damaged property is actually repaired or replaced; and

(2) unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

j. We will not pay more for loss or damage on a replacement cost basis than the least of (1), (2) or (3) subject to k. below:

(1) the Limit of Insurance applicable to the lost or damaged property;

(2) the cost to replace, the lost or damaged property with other property:

(a) of comparable material and quality; and

(b) used for the same purpose; or

(3) the amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new location, the cost described in (2) above is limited to the cost which would have been incurred if the building had been rebuilt at the original location.

k. The cost of repair or replacement does not include any increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

l. With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

Tenants' Improvements and Betterments are not considered to be the personal property of others.

**I. Limitation - Electronic Media and Records**

We will not pay for any loss of Business Income caused by direct physical loss of or damage to Electronic Media and Records after the longer of:

1. 60 consecutive days from the date of direct physical loss or damage; or

2. the period, beginning with the date of direct physical loss or damage, necessary to repair, rebuild or replace, with reasonable speed and similar quality, other property at the described location due to loss or damage caused by the same occurrence.

Electronic Media and Records are:

a. electronic data processing recording or storage media such as films, tapes, discs, drums or cells;

b. data stored on such media; or

c. programming records used for electronic data processing or electronically controlled equipment.

This limitation does not apply to Extra Expense.

## J. Definitions

1. **"Stock"** means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

2. **"Finished stock"** means stock you have manufactured.

   Finished stock also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations. Finished stock does not include stock you have manufactured that is held for sale on the location of any retail outlet insured under this Coverage Part.

3. **"Operations"** means:

   a. your business activities occurring at the described location; and

   b. the tenantability of the described location, if coverage for Business Income including "Rental Value" or "Rental Value" applies.

4. **"Rental Value"** means Business Income that consists of:

   a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the location described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the described location which is occupied by you; and

b. continuing normal operating expenses incurred in connection with that location, including:

   (1) payroll; and

   (2) the amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.

5. **"Period of Restoration"**

   Period of Restoration means the period of time that:

   a. begins immediately after the time of direct physical loss or damage for Business Income or Extra Expense coverage caused by or resulting from any Covered Cause of Loss at the described location; and

   b. ends on the earlier of:

      (1) the date when the property at the described location should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

      (2) the date when business is resumed at a new permanent location.

   Period of restoration does not include any increased period required due to the enforcement of any ordinance or law that:

   a. regulates the construction, use or repair, or requires the tearing down of any property; or

   b. requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants."

   The expiration date of this Policy will not cut short the "period of restoration."

SB 86 02 (Ed. 02 15)

## SELECT BUSINESS POLICY
## BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights and duties and what is and what is not covered.

Throughout this Policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **J. - Definitions.**

### A. Coverage

We will pay for direct physical loss of or damage to Covered Property shown in the Declarations caused by or resulting from any Covered Cause of Loss.

#### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this Section **A.1.**, and limited in **A.2., Property Not Covered**, if a Limit of Insurance is shown in the Declarations for that type of property.

**a. Building**, meaning the building or structure described in the Declarations, including:

(1) completed additions;

(2) fixtures, including outdoor fixtures and signs;

(3) signs, whether attached to building or not

(4) permanently installed:

(a) machinery;

(b) equipment; and

(5) personal property owned by you that is used to maintain or service the building or structure or its location, including but not limited to:

(a) fire extinguishing equipment;

(b) outdoor furniture;

(c) floor coverings; and

(d) appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(6) if not covered by other insurance:

(a) additions under construction, alterations and repairs to the building or structure;

(b) materials, equipment, supplies and temporary structures, on or within 1000 feet of the described location, used for making additions, alterations or repairs to the building or structure.

**b. Your Business Personal Property** as shown in the Declarations consisting of the following:

(1) furniture and fixtures;

(2) machinery and equipment;

(3) "stock";

(4) all other personal property owned by you and used in your business;

Includes copyrighted material of Insurance Services Office, Inc., with its permission

**(5)** labor, materials or services furnished or arranged by you on personal property of others;

**(6)** your use interest as tenant in Improvements and Betterments. Improvements and Betterments are fixtures, alterations, installations or additions:

    **(a)** made a part of the building or structure you occupy but do not own; and

    **(b)** you acquired or made at your expense but cannot legally remove;

**(7)** leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property of Others;

**(8)** signs, including signs attached to building, provided there is no coverage for the sign under the Building Covered Property.

**c. Personal Property of Others** that is in your care, custody or control as shown in the Declarations.

However, our payment for loss of, or damage to Personal Property of Others will only be for the account of the owner of the property.

## 2. Property Not Covered

Covered Property does not include:

**a.** accounts, bills, currency, deeds, food stamps or other evidences of debt, money, notes, or securities. Lottery tickets held for sale are not securities;

**b.** animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

**c.** automobiles held for sale;

**d.** bridges, roadways, walks, patios or other paved surfaces;

**e.** contraband, or property in the course of illegal transportation or trade;

**f.** the cost of excavations, grading, backfilling or filling;

**g.** foundations of buildings, structures, or boilers if their foundations are below:

    **(1)** the lowest basement floor; or

    **(2)** the surface of the ground, if there is no basement;

**h.** land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

**i.** personal property while airborne or waterborne (other than while on regular ferries or railroad car floats);

**j.** bulkheads, pilings, piers, wharves or docks;

**k.** property that is covered under another Coverage Form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**l.** retaining walls that are not part of a building;

**m.** underground pipes, flues or drains;

**n.** electronic data except as provided under **Additional Coverages - Electronic Data. Electronic Data** means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or

device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This paragraph **n.** does not apply to your "stock" of prepackaged software or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system;

**o.** the cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawing and card index systems. Refer to the Coverage Extension for Valuable Papers and Records (Other than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data;

**p.** vehicles or self-propelled machines (including aircraft or watercraft) that:

    **(1)** are licensed for use on public roads; or

    **(2)** are operated principally away from the described location.

    This paragraph does not apply to:

        **(a)** vehicles or self-propelled machines, other than autos, you manufacture, process or warehouse;

        **(b)** vehicles or self-propelled machines, other than autos, you hold for sale;

        **(c)** rowboats or canoes out of water at the described location; or

        **(d)** trailers, but only to the extent provided for in the Coverage Extension for Non-Owned Detached Trailers.

**q.** the following property while outside of buildings:

    **(1)** grain, hay, straw or other crops;

    **(2)** trees, shrubs or plants, (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), all except as provided in the Coverage Extensions.

**r.** property of others for which you have responsibility as a carrier for hire or as a broker, carloader, consolidator, freight forwarder, shipping association or similar arranger of transportation operation.

## B. Covered Causes of Loss

Covered Causes of Loss means Risks of Direct Physical Loss unless loss is:

    **1.** excluded in Section **C. Exclusions**; or

    **2.** limited in Section **D. Limitations**;

that follow.

## C. Exclusions

    **1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

        **a. Ordinance or Law**

        The enforcement of or compliance with any ordinance or law:

            **(1)** regulating construction; use or repair of any property; or

            **(2)** requiring the tearing down of any property including the cost of removing its' debris.

        This exclusion, Ordinance or Law, applies whether the loss results from:

            **(1)** an ordinance or law that is enforced even if the property has not been damaged; or

**(2)** the increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following a direct physical loss to that property.

**b. Earth Movement**

**(1)** earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

**(2)** landslide, including any earth sinking, rising or shifting related to such event;

**(3)** mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)** earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(5)** Volcanic eruption, explosion or effusion. But, if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for that resulting loss or damage caused by that fire, building glass breakage or volcanic action.

Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)** airborne volcanic blast or airborne shockwaves;

**(b)** ash, dust or particulate matter; or

**(c)** lava flow.

With respect to coverage for Volcanic Action as set forth in **(5)(a)**, **(5)(b)** and **(5)(c)**, all volcanic eruptions that occur within any 168 hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

This exclusion applies regardless of whether any of the above, in paragraphs **(1)** through **(5)**, is caused by an act of nature, man-made or is otherwise caused.

This exclusion does not apply to Covered Personal Property in due course of transit.

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation or radioactive contamination results in fire we will pay for that loss or damage caused by the fire.

### e. Utility Services

The failure of power or other utility service supplied to the described location however caused, if the failure:

**(1)** originates away from the described location; or

**(2)** originates at the described location, but only if such failure involves equipment used to supply the utility service to the described location from a source away from the described location.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power or the failure of communication, water or other utility services results in a Covered Cause of Loss, we will pay for the resulting loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to internet access or access to any electronic, cellular or satellite network.

### f. War and Military Action

**(1)** war, including undeclared or civil war;

**(2)** warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

### g. Water

**(1)** Flood, surface water, waves, (including tidal wave and tsunami) tides, tidal water, overflow of any body of water, or spray, by any of these all whether driven by wind or not.

**(2)** Mudslide or mudflow.

**(3)** Water under the ground surface pressing on, or flowing or seeping through:

    **(a)** foundations, walls, floors or paved surfaces;

    **(b)** basements, whether paved or not; or

    **(c)** doors, windows or other openings; or

**(4)** Waterborne material carried or otherwise moved by any of the water referred to in paragraph **(1)** or **(3)**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in paragraphs **(1)** through **(4)**, is caused by an act of nature, man-made or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if Water, as described in paragraphs **g.(1)** through **g.(4)** above results in fire, explosion, theft or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion, theft or sprinkler leakage.

This exclusion does not apply to Covered Personal Property in due course of transit.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

**h. "Fungus," Wet Rot, Dry Rot and Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus," wet or dry rot or bacteria.

But if "fungus," wet or dry rot or bacteria results in a "Specified Cause of Loss," we will pay for the loss or damage caused by that "Specified Cause of Loss."

This exclusion does not apply:

(1) when "fungus," wet or dry rot or bacteria results from fire or lightning; or

(2) to the extent that coverage is provided in the Additional Coverage - Limited Coverage for Fungus, Wet Rot, Dry Rot and Bacteria with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions **C.1.a.** through **C.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a.** Artificially generated electrical, magnetic or electromagnetic energy (including electric arcing) that damages, disturbs, disrupts or otherwise interferes with any:

(1) electrical or electronic wire, device, appliance, system or network; or

(2) device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

(a) electrical current, including arcing;

(b) electrical charge produced or conducted by a magnetic or electromagnetic field;

(c) pulse of electromagnetic energy; or

(d) electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by that fire.

**b.** Delay, loss of use or loss of market.

**c.** Smoke, vapor or gas from agricultural smudging or industrial operations.

**d.** (1) wear and tear;

(2) rust, or other corrosion, decay, deterioration, spoilage, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3) smog;

(4) settling, cracking, shrinking or expansion;

(5) disease, infestation or damage by insects, birds, rodents or other animals;

(6) mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision;

(7) changes:

(i) in humidity

(ii) of temperature

all whether atmospheric or not;

(8) marring or scratching.

But if an excluded cause of loss that is listed in **2.d (1)** through **(8)** results in a "specified cause of loss" or building glass breakage, we will pay for the

loss or damage caused by that "speci-fied cause of loss" or building glass breakage.

**e.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for the loss or damage caus-ed by or resulting from the explosion of gases or fuel within the flues or passages through which the gases of combustion pass.

**f.** Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**g.** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protec-tive systems) caused by or resulting from freezing, unless:

    **(1)** you do your best to maintain heat in the building or structure; or

    **(2)** you drain the equipment and shut off the supply if the heat is not maintained.

**h.** Dishonest or criminal act (including theft) by you, any of your partners, members, officers, managers, em-ployees (including temporary employ-ees and leased workers), directors, trustees, authorized representatives, whether acting alone or in collusion with each other or any other party; or theft by any person to whom you en-trust the property for any purpose whether acting alone or in collusion with each other or any other party.

This exclusion:

    **(1)** applies whether or not an act oc-curs during your normal hours of operation.

    **(2)** does not apply to acts of de-struction by your employees (in-cluding temporary employees and leased employees workers) or authorized representatives; but theft by your employees (includ-ing temporary employees and leased workers) or authorized re-presentatives is not covered.

**i.** Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**j.** Rain, snow, ice or sleet to personal property in the open.

**k.** Collapse, including any of the follow-ing conditions of property or any part of the property:

    **(1)** an abrupt falling down or caving in;

    **(2)** loss of structural integrity, in-cluding separation of parts of the property or property in danger of falling down or caving in; or

    **(3)** any cracking, bulging, sagging, bending, leaning, settling, shrink-age or expansion as such con-dition relates to **(1)** or **(2)** above.

But if collapse results in a Covered Cause of Loss at the described loca-tion, we will pay for the loss or dam-age caused by that Covered Cause of Loss.

This exclusion, **k.**, does not apply:

    **(a)** to the extent that coverage is provided under the Additional Coverage, Collapse; or

    **(b)** to collapse caused by one or more of the following:

        **(i)** the "specified causes of loss";

        **(ii)** breakage of building glass;

        **(iii)** weight of rain that collects on a roof; or

**(iv)** weight of people or personal property.

**l.** Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss." But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss," we will pay for the loss or damage caused by that "specified cause of loss."

This exclusion, l., does not apply to damage to glass caused by chemicals applied to the glass.

**m.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**3.** We will not pay for loss or damage caused by or resulting from any of the following **3.a.** through **3.c.** But if an excluded Cause of Loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a.** Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph **1.** above to produce the loss or damage.

**b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c.** Faulty, inadequate or defective:

**(1)** planning, zoning, development, surveying, siting;

**(2)** design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**(3)** materials used in repair, construction, renovation or remodeling; or

**(4)** maintenance;

of part or all of any property on or off the described location.

**4. Additional Exclusion**

The following provisions apply only to the specified property:

**Loss or Damage to Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**D. Limitations**

**1.** We will pay for direct physical loss or damage to Covered Personal Property which is in due course of transit at your risk if the Covered Personal Property is:

**a.** in the custody of a carrier or bailee for hire; or

**b.** on vehicles you own or operate; but

only up to the Transit Limit of Insurance shown in the Declarations and subject to the Transit deductible shown in the Declarations.

**2.** We will not pay for loss or damage to any of the following types of property if the loss or damage occurs at an unnamed location or while in transit:

**a.** musical Instruments;

**b.** contractors' equipment, including cranes.

This limitation does not apply to musical instruments or contractors equipment you manufacture, process or hold for sale.

3. We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

   a. Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

   b. Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

   c. Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

      However, this limitation does not apply to building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form.

   d. Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

   e. Property that has been transferred to a person or to a place outside the described location on the basis of unauthorized instructions.

   f. Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

      (1) dampness or dryness of atmosphere or of soil supporting the vegetation;

      (2) changes in or extremes of temperature;

      (3) disease;

      (4) frost or hail; or

      (5) rain, snow, ice or sleet.

4. We will not pay more than $10,000 for loss or damage to the interior of any building or structure or to the contents in the building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

   a. the building or structure first sustains damage by a Covered Cause of Loss to its roof, excluding temporary coverings, or walls through which the rain, snow, sleet, ice, sand or dust enters; or

   b. the loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

5. We will only pay for loss of or damage to animals if the loss or damage is caused by any of the "specified causes of loss" or building glass breakage, and then only if they are killed or their destruction is made necessary.

6. The special limit shown for each category, a. through c., is the total limit for loss of or damage to all property in that category, unless a higher Limit of Insurance is shown in the Declarations.

   The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are:

   a. $2,500 for furs, fur garments and garments trimmed with fur.

   b. $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

c. $250 for stamps, tickets (including lottery tickets held for sale) and letters of credit.

These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

7. We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder, or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

a. results in discharge of any substance from any automatic fire protection system; or

b. is directly caused by freezing.

## E. Additional Coverages

### 1. Collapse

a. for the purpose of this Additional Coverage, collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose;

b. we will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if the collapse is caused by one or more of the following:

(1) the "specified causes of loss" or breakage of building glass, all only as insured against in this Coverage Part;

(2) building decay that is hidden from view, unless the presence of such decay is known, or should have been known, to an insured prior to collapse;

(3) insect, bird, rodent or other animal damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

(4) weight of people or personal property;

(5) weight of rain that collects on a roof;

(6) use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

However, if the abrupt collapse occurs after construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in 1.b(1) through 1.b.(5), we will pay for the loss or damage even if use of defective material or methods, in construction, remodeling or renovation, contributes to the collapse.

c. This Additional Coverage Collapse does not apply to:

(1) a building or any part of a building that is in danger of falling down or caving in;

(2) a part of a building that is standing even if it has separated from another part of the building;

(3) a part of a building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

d. With respect to the following property:

(1) outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

(2) awnings, gutters and downspouts;

(3) yard fixtures;

(4) outdoor swimming pools;

(5) fences;

(6) piers, wharves and docks;

(7) beach or diving platforms or appurtenances;

(8) retaining walls; and

(9) walks, roadways and other paved surfaces;

if the abrupt collapse is caused by a Cause of Loss listed in **b.(2)** through **b.(6)**, we will pay for loss or damage to that property only if:

(1) such loss or damage is a direct result of the collapse of a building insured under this Coverage Form; and

(2) the property is Covered Property under this Coverage Form.

**e.** if personal property abruptly falls down or caves in and such collapse is not the result of collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

(1) the collapse was caused by a Cause of Loss listed in **b.(1)** through **b.(6)** above;

(2) the personal property which collapses is inside a building; and

(3) the property which collapses is not of a kind listed in **c.** above, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this paragraph **e.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

**f.** This Additional Coverage, Collapse, does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**g.** This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this Coverage Part.

**h.** The term Covered Cause of Loss includes the Additional Coverage, Collapse, as described and limited in **1.a.** through **1.g.**

**2. Limited Coverage for "Fungus," Wet Rot, Dry Rot and Bacteria**

**a.** The coverage described in **2.b.** only applies when the "fungus," wet or dry rot or bacteria is the result of one or more of the following causes that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

(1) a "specified cause of loss" other than fire or lightning; or

(2) flood, if the Flood Coverage Endorsement applies to the affected location.

This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

**b.** We will pay for loss or damage by "fungus," wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

(1) direct physical loss or damage to Covered Property caused by "fungus," wet or dry rot or bacteria, including the cost of removal of the "fungus," wet or dry rot or bacteria;

(2) the cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus," wet or dry rot or bacteria; and

(3) the cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus," wet or dry rot or bacteria are present.

c. The coverage described under **2.b.** of this Limited Coverage is limited to $15,000 or the Limit of Insurance as shown in the Declarations, whichever is greater. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurences of "specified causes of loss" (other than fire or lightning) and Flood which take place in a 12 month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus," wet or dry rot or bacteria, we will not pay more than a total of $15,000 or the Limit of Insurance as shown in the Declarations, whichever is greater, even if the "fungus," wet or dry rot or bacteria continues to be present or active, or recurs, in a later policy period.

d. The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus," wet or dry rot or bacteria, and other loss or damage, we will not pay more for the total of all loss or damage than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungus," wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus," wet or dry rot or bacteria causes an increase in

the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

e. The terms of this Limited Coverage do not increase or reduce the coverage provided under paragraph **F.6.** (Water Damage, Other Liquids, Powder or Molten Material Damage) of this form or under the Additional Coverage - Collapse.

### 3. Debris Removal

a. Subject to paragraphs **c.** and **d.**, we will pay your expense to remove debris of Covered Property and other debris that is on the described location when such debris is caused by or resulting from a Covered Cause of Loss that occurs during the policy period.

The expenses will be paid only if they are reported to us in writing within 180 days of the direct physical loss or damage.

b. Debris Removal does not apply to costs to:

(1) remove debris of property of yours that is not insured under this Policy, or property in your possession that is not Covered Property;

(2) remove debris of property owned by or leased to the landlord of the building where your described location is located, unless you have a contractual responsibility to insure such property and it is insured under this Policy;

(3) remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

(4) remove property of others of a type that would not be Covered Property under this Coverage Form;

**(5)** remove deposits of mud or earth from the grounds of the described location;

**(6)** extract "pollutants" from land or water; or

**(7)** remove, restore or replace polluted land or water.

**c.** Subject to the exception in paragraph **d.**, the following provisions apply:

**(1)** The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

**(2)** Subject to **(1)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

**d.** We will pay up to the limit shown for Debris Removal on the Declarations for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(1)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(2)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if **d.(1)** and/or **d.(2)** apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage plus the limit shown for Debris Removal on the Declarations for each location in any one occurrence under the Debris Removal Additional Coverage.

**e. Examples**

The following examples assume that there is no coinsurance penalty and the limit shown under Debris Removal Additional Coverage on the Declarations page equals $10,000.

**Example #1**

| | |
|---|---|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $ 500 |
| Amount of Loss | $ 50,000 |
| Amount of Loss Payable | $ 49,500 |
| ($ 50,000 - $500) | |
| Debris Removal Expense | $ 10,000 |
| Debris Removal Expense | |
| Payable | $ 10,000 |
| ($ 10,000 is 20% of $ 50,000) | |

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore the full amount of debris removal expense is payable in accordance with the terms of paragraph **c.**

**Example #2**

| | |
|---|---|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $ 500 |
| Amount of Loss | $ 80,000 |
| Amount of Loss Payable | $ 79,500 |
| ($ 80,000 - $500) | |
| Debris Removal Expense | $ 30,000 |
| Debris Removal Expense | |
| Payable | $ 20,500 |
| Basic Amount | $ 10,500 |
| Additional Amount | $ 25,000 |

The basic amount payable for debris removal expense under the terms of paragraph **c.** is calculated as follows: $80,000 ($79,500 + $500) x 25% = $20,000; capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of paragraph **d.**, because the debris removal expense ($30,000) exceeds 25% of the loss payable plus the deductible ($30,000 is 37.5% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $30,000 = $109,500) would exceed the Limit of Insurance ($90,000).

The additional amount of covered debris removal expense is limited to $25,000, which is equal to the limit shown on the Declarations page, as stated under paragraph **d.** Thus, the total payable for debris removal expense in this example is $20,500; $9,500 of the debris removal expense is not covered.

#### 4. Fire Department Service Charge

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to the limit specified in the Declarations for service at each location described in the Schedule of Locations.

Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of service performed.

This Additional Coverage applies to your liability for fire department service charges:

**a.** assumed by contract or agreement prior to loss; or

**b.** required by local ordinance.

No Deductible applies to this Additional Coverage.

#### 5. Fire Protection Device Recharge

We will pay, up to the limit listed in the Declarations for this Additional Coverage, to recharge or refill your fire protective devices that are permanently installed in buildings at the described location.

This Additional Coverage only applies when such devices have been discharged while being used to combat a covered fire.

#### 6. Claims Data Preparation Expense

We will pay, up to the limit listed in the Declarations for this Additional Coverage, for reasonable costs you incur in preparing loss data required by policy conditions after a loss covered by this Coverage Part. This includes the cost of taking inventory, making appraisals and preparing other data to determine the extent of your loss. This does not include public adjustors fees.

#### 7. Pollutant Clean Up and Removal

We will pay your expense to extract "pollutants" from land or water at each location if the release, discharge, seepage, migration, escape or dispersal of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period.

The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants." But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay for each described location under this Additional Coverage is stated in the Declarations for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this Policy.

No Deductible applies to this Additional Coverage.

## 8. Electronic Data

a. Under this Additional Coverage, electronic data has the meaning described under Property Not Covered - Electronic Data. This Additional Coverage does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

b. Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

c. The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage - Electronic Data, subject to the following:

(1) Coverage under this Additional Coverage - Electronic Data is limited to the "specified causes of loss" and Collapse as defined in this form.

(2) If the Policy is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage - Electronic Data.

(3) The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

d. The most we will pay under this Additional Coverage - Electronic Data is $2,500 or the Limit of Insurance as shown in the Declarations, whichever is greater, for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the Policy year in which the occurrence began.

## 9. Preservation of Property

If it is necessary to move Covered Property from the described location to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

a. while it is being moved or while temporarily stored at another location; and

b. only if the loss or damage occurs within 30 days after the property is first moved.

## 10. Brands and Labels Expense

If branded or labeled merchandise that is covered Property is damaged by a Covered Cause of Loss, we may take all or any part of the property at an agreed or appraised value. If so, we will pay reasonable expenses you incur to:

**a.** stamp the word salvage on the merchandise or its containers, if the stamp will not physically damage the merchandise; or

**b.** remove the brands or labels if doing so will not physically damage the merchandise. You must relabel the merchandise or its containers to comply with the law.

The most we will pay under this Additional Coverage - Brands and Labels expense, is $5,000 or the Limit of Insurance as shown in the Declarations, whichever is greater.

## 11. Consequential Loss

We will pay up to $2,500 per occurrence, unless a different Limit of Insurance is shown on the declarations, for the reduction in value of undamaged Business Personal Property parts of a product which becomes unmarketable. The reduction in value must be the direct result of physical loss or damage from a covered Cause of Loss to another part of the product.

## 12. Reward Payment

**a.** We will reimburse you for rewards paid as follows:

  **(1)** Up to $5,000 per occurrence unless a different Limit of Insurance is shown in the Declarations, to an eligible person for information leading to the arrest and conviction of any person or persons committing a crime resulting in loss to Covered Property from a Covered Cause of Loss. However, we will pay no more than the lesser of the following amounts:

    **(a)** replacement Cost of the Covered Property at the time of loss or damage, but not more than the amount required to repair or replace it; or

    **(b)** the amount determined by the loss settlement procedure applicable to the Covered Property.

  **(2)** Up to $5,000 per occurrence unless a different Limit of Insurance is shown in the Declarations, to an eligible person for the return of stolen Covered Property, when the loss is caused by theft. However, we will pay no more than the lesser of the following amounts:

    **(a)** replacement Cost based on the condition of the Covered Property at the time it is returned, but not more than the amount required to repair or replace it; or

    **(b)** the amount determined by the loss settlement procedure applicable to the Covered Property.

**b.** This Additional Coverage applies subject to the following conditions:

  **(1)** An eligible person means that person designated by a law enforcement agency as being the first to voluntarily provide the necessary information or return the stolen Covered Property, and who is not:

    **(a)** you or any family member;

    **(b)** you "employee" or any of his or her family members;

    **(c)** an employee of a law enforcement agency;

    **(d)** an employee of a business engaged in property protection;

    **(e)** any person who had custody of the Covered Property at the time the theft was committed; or

    **(f)** any person involved in the crime.

**(2)** There will be no reimbursement for a reward paid unless and until the person(s) committing the crime is (are) convicted or the Covered Property is returned.

**(3)** The amount of the reward is the most we will reimburse under this Additional Coverage for loss in any one occurrence.

**(4)** The Insured must have posted public notice of the reward prior to the person having been the first to voluntarily provide the necessary information or return the stolen Covered Property.

## F. Coverage Extensions

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the described location.

**1. Newly Acquired or Constructed Property**

**a. Buildings**

If this Policy covers Building, you may extend that insurance to apply to:

**(1)** your new buildings while being built on the described location; and

**(2)** buildings you acquire at locations, other than the described location, intended for:

**(a)** similar use as the building described in the Declarations; or

**(b)** use as a warehouse.

The most we will pay for loss or damage under this Extension is the Limit of Insurance for this Coverage Extension, shown in the Declarations.

**b. Your Business Personal Property**

**(1)** If this Policy covers Your Business Personal Property, you may extend that insurance to apply to:

**(a)** Business Personal Property, including such property that you newly acquire, at any location you acquire other than fairs, trade shows or exhibitions;

**(b)** Business Personal Property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations; or

**(c)** Business Personal Property, that you newly acquire, located at the described location.

The most we will pay for loss or damage under this Extension is the Limit of Insurance for this Coverage Extension, shown in the Declarations.

**(2)** This extension does not apply to:

**(a)** personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

**(b)** personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**c. Period of Coverage**

With respect to insurance on or at each newly acquired or constructed property, coverage will end when any of the following first occurs:

**(1)** this Policy expires;

**(2)** 90 days expire after you acquire the property or begin construction on that part of the building that would qualify as covered property; or

**(3)** you report values to us.

We will charge you additional premium for values reported from the date construction begins or you acquire the property.

**d.** If the coverage provided by this extension has expired due to Item **c.** above, the Limit of Insurance shown in the Declarations for "At Any Other Location" will apply.

## 2. Personal Effects

You may extend the insurance that applies to Your Business Personal Property to apply to personal effects owned by you, your officers, your partners or members, your managers or your employees. This extension does not apply to loss or damage by theft.

The most we will pay for loss or damage under this Extension is stated in the Declarations for this Extension per each described location. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

No Deductible applies to this Coverage Extension.

## 3. Valuable Papers and Records (Other than Electronic Data)

**a.** You may extend the insurance that applies to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered Electronic Data.

**b.** Coverage under this Extension is limited to the "specified causes of loss" and Collapse as defined in this form.

**c.** Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described location, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist), and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and therefore coverage of such costs is not additional insurance.

## 4. Outdoor Property

You may extend the insurance provided by this Coverage Form to apply to your trees, shrubs and plants (other than trees, shrubs or plants which are stock or are part of a vegetated roof) piers, wharves, docks or retaining walls (not attached to buildings), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**a.** fire;

**b.** lightning;

**c.** explosion;

**d.** riot or Civil Commotion; or

**e.** aircraft.

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described location the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described location.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

104131

## 5. Non-Owned Detached Trailers

a. You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

   (1) the trailer is used in your business;

   (2) the trailer is in your care, custody or control at the location described in the Declarations; and

   (3) you have a contractual responsibility to pay for loss or damage to the trailer.

b. We will not pay for loss or damage that occurs:

   (1) while the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

   (2) during hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

c. The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

d. This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

## 6. Water Damage, Other Liquids, Powder or Molten Material Damage - Tear Out Expense

In the event of covered loss or damage caused by or resulting from water (or steam), other liquid, powder or molten material damage occurs, we will also pay the necessary cost to access the specific break, hole or crack in the pipe, appliance or fitting to repair the break, hole or crack.

We will not pay to access any other parts of the system that may otherwise be damaged (for example by rust or normal wear and tear) where there was no break, hole or crack where covered water, liquid, powder or molten material was released.

We will also not pay the cost to repair or replace the break, hole or crack or the cost to repair or replace that which was removed in gaining access to the break, hole or crack.

## 7. Glass

a. We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

b. We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

Each of these Extensions is additional insurance, except for 6. Water Damage, Other Liquids, Powder or Molten Material Damage and 7. Glass.

Payments under the following Extensions will not increase the applicable Limit of Insurance:

   (1) Water Damage, Other Liquids, Powder or Molten Material Damage

   (2) Glass.

The Additional Condition, Coinsurance, does not apply to these Extensions.

## G. Limits of Insurance

The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

The amounts of insurance stated in the following Additional Coverages apply in accordance with the terms of such coverages and are separate from the Limit(s) of Insurance shown in the Declarations for any other coverage:

   1. Fire Department Service Charge;

**2.** Pollutant Clean-up and Removal;

**3.** Increased Cost of Construction; and

**4.** Electronic Data.

Payments under the Preservation of Property Additional Coverage will not increase the applicable Limit of Insurance.

## H. Deductible

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by a Coinsurance Condition. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss, and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

## I. Optional Coverages

### 1. Inflation Guard

**a.** The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

**b.** The amount of increase will be:

**(1)** the Limit of Insurance that applied on the most recent of the Policy inception date, the Policy anniversary date, or any other policy change amending the Limit of Insurance, times

**(2)** the percentage of annual increase shown in the Declarations expressed as a decimal (example 8% is .08), times

**(3)** the number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

### Example:

If:  The applicable Limit
of Insurance is          $100,000

and the annual percentage
increase is                    8%

The number of days
since the beginning
of the Policy year
(or last
change) is                    146

The amount of increase is
$100,000 X .08
X 146  ÷  365 =        $3,200

### 2. Ordinance or Law

**a.** Each of the Coverages - Coverage **A**, Coverage **B** and Coverage **C** - applies only if that Coverage(s) is chosen by entry in the Declarations and then only with respect to the Building property identified for that Coverage(s) in the Declarations.

**b. Application of Coverage**

The coverage provided by this Optional Coverage applies only if both **(1)** and **(2)** are satisfied and then subject to the qualifications set forth in **(3)**.

**(1)** The ordinance or law:

**(a)** regulates the demolition, construction or repair of buildings, or establishes zoning or land use requirements at the described location; and

**(b)** is in force at the time of loss.

But coverage under this Optional Coverage applies only in response to the minimum requirements of the ordinance or law.

Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered under this Optional Coverage.

**(2)** **(a)** the building sustains direct physical damage that is covered under this Policy and such damage results in enforcement of the ordinance or law; or

**(b)** the building sustains both direct physical damage that is covered under this Policy and direct physical damage that is not covered under this Policy, and the building damage in its entirety results in enforcement of or compliance with the ordinance or law.

**(c)** but if the building sustains direct physical damage that is not covered under this Policy, and such damage is the subject of the ordinance or law, then there is no coverage under this Optional Coverage even if the building has also sustained covered direct physical damage.

**(3)** In the situation described in **(2)(b)** above, we will not pay the full amount of loss otherwise payable under the terms of Coverages **A**, **B** and/or **C** of this Optional Coverage. Instead, we will pay a proportion of such loss; meaning the proportion that the covered direct physical damage bears to the total direct physical damage.

However, if the covered direct physical damage, alone, would have resulted in enforcement of or compliance with the ordinance or law, then we will pay the full amount of loss otherwise payable under the terms of Coverages **A**, **B** and/or **C** of this Optional Coverage.

**c.** We will not pay under Coverages **A**, **B** and/or **C** of this Optional Coverage for:

**(1)** enforcement of or compliance with any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus," wet or dry rot or bacteria; or

**(2)** the costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants," "fungus," wet or dry rot or bacteria.

**d. Coverage**

**(1) Coverage A - Coverage for Loss to the Undamaged Portion of the Building**

With respect to the building that has sustained covered direct physical damage, we will pay under Coverage **A** for the loss in value of the undamaged portion of the building as a consequence of enforcement of or compliance with any ordinance or law that requires demolition of undamaged parts of the same building.

Coverage **A** is included within the Limit of Insurance shown in the Declarations as applicable to the covered building. Coverage **A** does not increase the Limit of Insurance.

**(2) Coverage B - Demolition Cost Coverage**

With respect to the building that has sustained covered direct physical damage, we will pay the cost to demolish and clear the site of undamaged parts of the

Includes copyrighted material of Insurance Services Office, Inc., with its permission

same building, as a consequence of enforcement of any ordinance or law that requires demolition of such undamaged property.

If attached, the Coinsurance Additional Condition Endorsement does not apply to Demolition Cost Coverage.

**(3) Coverage C - Increased Cost of Construction Coverage**

    **(a)** With respect to the building that has sustained covered direct physical damage, we will pay the increased cost to:

        **(i)** repair or reconstruct damaged portions of that Building property; and/or

        **(ii)** reconstruct or remodel undamaged portions of that Building property, whether or not demolition is required;

when the increased cost is a consequence of enforcement of or compliance with the minimum requirements of the ordinance or law.

However:

        **(i)** This coverage applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.

        **(ii)** We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

If attached, the Coinsurance Additional Condition Endorsement, does not apply to Increased Cost of Construction Coverage.

    **(b)** When a building is damaged or destroyed and Coverage **C** applies to that building in accordance with **(3)(a)** above, coverage for the increased cost of construction also applies to repair or reconstruction of the following, subject to the same conditions stated in **(3)(a)**:

        **(i)** the cost of excavations, grading, backfilling and filling;

        **(ii)** foundation of the building;

        **(iii)** pilings; and

        **(iv)** underground pipes, flues and drains.

The items listed in **(b)(i)** through **(b)(iv)** above are deleted from Property Not Covered, but only with respect to the coverage described in this Provision **(3)(b)**.

**e. Loss Payment**

    **(1)** All following loss payment Provisions **e.(2)** through **e.(4)**, are subject to the apportionment procedures set forth in Section **b.(3)** of this Optional Coverage.

    **(2)** When there is a loss in value of an undamaged portion of a building, to which Coverage **A** applies, the loss payment for that building, including damaged and undamaged portions, will be determined as follows:

        **(a)** If the replacement cost valuation applies, and the property is being repaired or replaced, on the same or another location, we will not pay more than the lesser of:

(i) the amount you would actually spend to repair, rebuild or reconstruct the Building property, but not for more than the amount it would cost to restore the Building property on the same location and to the same height, floor area, style and comparable quality of the original property insured; or

(ii) the Limit of Insurance shown in the Declarations as applicable to the covered Building property.

(b) If the replacement cost valuation applies and the property is **not** repaired or replaced, or if the replacement cost valuation does **not** apply, we will not pay more than the lesser of:

(i) the actual cash value of the Building property at the time of loss; or

(ii) the Limit of Insurance shown in the Declarations as applicable to the covered Building property.

(3) Loss payment under Coverage **B** Demolition Cost Coverage will be determined as follows:

We will not pay more than the lesser of the following:

(a) the amount you actually spend to demolish and clear the site of the described location; or

(b) the applicable Limit of Insurance shown for Coverage **B** in the Declarations.

(4) Loss payment under Coverage **C** - Increased Cost of Construction Coverage will be determined as follows:

(a) We will not pay under Coverage **C**:

(i) until the property is actually repaired or replaced, at the same or another location; and

(ii) unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

(b) If the building is repaired or replaced at the same location, or if you elect to rebuild at another location, the most we will pay under Coverage **C** is the lesser of:

(i) the increased cost of construction at the same location; or

(ii) the applicable Limit of Insurance shown for Coverage **C** in the Declarations.

(c) If the ordinance or law requires relocation to another location, the most we will pay under Coverage **C** is the lesser of:

(i) the increased cost of construction at the new location; or

(ii) the applicable Limit of Insurance shown for Coverage **C** in the Declarations.

f. Under this Optional Coverage we will not pay for loss due to any ordinance or law that:

    **(1)** you were required to comply with before the loss, even if the building was undamaged; and

    **(2)** you failed to comply with.

This includes the following:

    **(a)** intentional disregard of the ordinance or law; or

    **(b)** the failure to recognize and comply with the ordinance or law; or

    **(c)** the failure of Code Enforcement Authority having responsibility for the jurisdiction in which the building is located to enforce the ordinance or law.

### 3. Utility Services

#### a. Coverage

We will pay for loss of or damage to Covered Property described in the Declarations, caused by the interruption of service to the described location. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the following property, not on the described premise.

#### b. Exception

Coverage under this Optional Coverage does not apply to loss or damage to electronic data, including destruction or corruption of electronic data. The term electronic data has the meaning set forth in this coverage form.

#### c. Utility Services

    **(1) Water Supply Services,** meaning the following types of property supplying water to the described location:

        **(a)** pumping stations; and

        **(b)** water mains.

    **(2) Communication Supply Services,** meaning property supplying communication services, including telephone, radio, microwave or television services to the described location, such as:

        **(a)** communication transmission lines, including optic fiber transmission lines;

        **(b)** coaxial cables; and

        **(c)** microwave radio relays except satellites.

    **(3) Power Supply Services,** meaning the following types of property supplying electricity, steam or gas to the described location:

        **(a)** utility generating plants;

        **(b)** switching stations;

        **(c)** substations;

        **(d)** transformers; and

        **(e)** transmission lines.

**d.** As used in this optional coverage, the term transmission lines includes all lines which serve to transmit communication service or power, including lines which may be identified as distribution lines.

**e.** The Utility Services Limit of Insurance as shown on the Declarations is part of, not in addition to, the Limit of Insurance stated in the Declarations, as applicable to the Covered Property.

### J. Definitions

    **1. "Fungus"** means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

    **2. "Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

3. **"Stock"** means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

4. **"Specified Causes of Loss"** means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

   a. **Sinkhole collapse** means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite.

      This cause of loss does not include:

      **(1)** the cost of filling sinkholes; or

      **(2)** sinking or collapse of land into man-made underground cavities.

   b. **Falling objects** does not include loss or damage to:

      **(1)** personal property in the open; or

      **(2)** the interior of a building or structure, or property inside a building or structure unless the roof or an outside wall of the building or structure is first damaged by a falling object.

   c. **Water damage** means:

      **(1)** accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts) that

is located on the described location and contains water or steam; and

   **(2)** accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the described location and is part of a municipal potable water supply system or municipal sanitary sewer system, if the breakage or cracking is caused by wear and tear.

But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage under this Policy in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in **c.(1)** or **c.(2)** of this definition of "specified causes of loss," such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the surface of the ground.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

SB 86 07 (Ed. 02 15)

## SELECT BUSINESS POLICY EXTRA EXPENSE COVERAGE FORM

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights and duties and what is and is not covered.

Throughout this Policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us," and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H. Definitions**.

### A. Coverage

We will pay for the actual and necessary Extra Expense you sustain due to the direct physical loss of or damage to property, at the location described in the Declarations and for which an Extra Expense Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described location includes the area within 1000 feet of the site of the described location.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your location means:

**a.** the portion of the building which you rent, lease or occupy; and

**b.** the area within 1000 feet of the building or within 1000 feet of the location described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**c.** any area within the building or at the described location, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

### Extra Expense

**Extra Expense** means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property. Coverage pertains to expenses (other than the expense to repair or replace property) which are incurred to:

**1.** Avoid or minimize the "suspension" of business and to continue "operations" at the described location or at a replacement location or a temporary location, including relocation expenses and costs to equip and operate the replacement location or temporary location.

**2.** Minimize the "suspension" of business if you cannot continue "operations."

We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

### B. Covered Causes of Loss, Exclusions and Limitations

**Covered Causes of Loss** means Risks of Direct Physical Loss unless the loss is:

**1.** excluded in Section **C. Exclusions**, of the **Select Business Policy Building and Personal Property Coverage Form**;

**2.** limited in Section **D. Limitations** of the **Select Business Policy Building and Personal Property Coverage Form;**

**3.** excluded in Section **C. Special Exclusions**, below; or

**4.** limited in Section **D. Additional Limitation**, below.

## C. Special Exclusions

We will not pay for:

**1.** Any increase of loss caused by or resulting from:

**a.** delay in rebuilding, repairing or replacing the property or resuming "operations," due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

**b.** suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations" we will cover such loss that affects your Extra Expense during the "period of restoration."

**2.** Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration."

**3.** Any other consequential loss.

**4.** Any loss caused by or resulting from damage or destruction of property in transit.

## D. Additional Limitation - Interruption of Computer Operations

**1.** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the **Additional Coverage - Interruption of Computer Operations**.

**2.** Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**3.** This Additional Limitation does not apply when loss or damage to electronic data involves only electronic data which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

## E. Additional Coverages

### 1. Civil Authority

We will pay for the actual and necessary Extra Expense you incur caused by action of civil authority that prohibits access to the location described in the Declarations due to direct physical loss of or damage to property, other than at the described location, caused by or resulting from any Covered Cause of Loss, provided that both of the following apply:

**(a)** access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described location is within that area but is not more than five miles from the damaged property; and

**(b)** the action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage will begin imme-
diately after the time of the first action of
civil authority that prohibits access to the
described location and will end four con-
secutive weeks after the date of that ac-
tion.

**2. Alterations and New Buildings**

We will pay for the actual and necessary
Extra Expense you incur due to direct
physical loss or damage at the described
location caused by or resulting from any
Covered Cause of Loss to:

a. new buildings or structures, whether
complete or under construction;

b. alterations or additions to existing
buildings or structures; and

c. machinery, equipment, supplies or
building materials located on or within
1000 feet of the described location
and:

(1) used in the construction, alter-
ations or additions; or

(2) incidental to the occupancy of
new buildings.

**3. Interruption of Computer Operations**

a. Under this Additional Coverage, elec-
tronic data has the meaning described
under **Additional Limitation - Inter-
ruption of Computer Operations**.

b. Subject to all provisions of this Addi-
tional Coverage, you may extend the
insurance that applies to Extra Expense
to apply to a "suspension" of "oper-
ations" caused by an interruption in
computer operations due to destruc-
tion or corruption of electronic data
due to a Covered Cause of Loss.
However, we will not provide cov-
erage under this Additional Coverage
when the **Additional Limitation - In-
terruption of Computer Operations**
does not apply based on paragraph
**D.3.** therein.

c. With respect to the coverage provided
under this Additional Coverage, the
Covered Causes of Loss are subject
to the following:

(1) Coverage under this **Additional
Coverage - Interruption of
Computer Operations** is limited
to the "specified causes of loss"
as defined in the **Select Business
Policy Building and Personal
Property Coverage Form**, and
**Collapse** as set forth in that
form.

(2) If the **Select Business Policy
Building and Personal Property
Coverage Form** is endorsed to
add a Covered Cause of Loss, the
additional Covered Cause of Loss
does not apply to the coverage
provided under this **Additional
Coverage - Interruption of
Computer Operations**.

(3) The Covered Causes of Loss in-
clude a virus, harmful code or
similar instruction introduced into
or enacted on a computer system
(including electronic data) or a
network to which it is connected,
designed to damage or destroy
any part of the system or disrupt
its normal operation. But there is
no coverage for an interruption
related to manipulation of a com-
puter system (including electronic
data) by any employee, including a
temporary or leased employee, or
by an entity retained by you or
for you to inspect, design, install,
maintain, repair or replace that
system.

d. The most we will pay under this **Addi-
tional Coverage - Interruption of
Computer Operations** is $2,500 (or
the limit of insurance shown in the
Declarations, whichever is greater), for
all loss sustained in any one policy
year, regardless of the number of in-
terruptions or the number of prem-
ises, locations or computer systems
involved. If loss payment relating to
the first interruption does not exhaust

this amount, then the balance is available for loss sustained as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss in a subsequent policy year(s), all loss is deemed to be sustained in the policy year in which the interruption began.

**e.** This **Additional Coverage - Interruption of Computer Operations** does not apply to loss sustained after the end of the "period of restoration," even if the amount of insurance stated in **d.** above has not been exhausted.

## F. Coverage Extensions

### 1. Newly Acquired Locations

**a.** You may extend your Extra Expense Coverage to apply to property at any location you acquire other than fairs or exhibitions.

**b.** The most we will pay for loss under this Extension is $100,000 at each location unless a higher limit is shown in the Declarations.

**c.** Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

**(1)** this Policy expires;

**(2)** 90 days expire after you acquire or begin to construct the property; or

**(3)** you notify us of how you want this coverage to apply to that location.

We will charge you additional premium from the date you acquire the property.

This Extension is additional insurance.

### 2. Property at any Other Location

**a.** You may extend your Extra Expense Coverage to apply to property at any location other than a described location or a newly acquired location.

**b.** The most we pay, at each location, for loss under this Extension is the limit shown in the Declarations.

## G. Limits of Insurance

The most we will pay for loss in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

Payments under the following coverages will not increase the applicable Limit of Insurance:

### 1. Civil Authority;

### 2. Alterations and New Buildings.

The amounts of insurance stated in the Interruption of Computer Operations Additional Coverage and the Coverage Extensions apply in accordance with the terms of those coverages and are separate from the Limit(s) of Insurance shown in the Declarations for any other coverage.

## H. Definitions

### 1. "Operations" means your business activities occurring at the described location.

### 2. "Period of Restoration" means the period of time that:

**a.** begins with the date of direct physical loss or damage caused by or resulting from any Covered Caused of Loss at the described location; and

**b.** ends on the earlier of:

**(1)** the date when the property at the described location should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

**(2)** the date when business is resumed at a new permanent location.

"Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

a. regulates the construction, use or re-pair, or requires the tearing down of any property; or

b. requires any Insured or others to test for, monitor, clean up, remove, con-tain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants."

The expiration date will not cut short the "period of restoration."

3. **"Pollutants"** means any solid, liquid, gas-eous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, ac-ids, alkalis, chemicals and waste. Waste includes materials to be recycled, recondi-tioned or reclaimed.

4. **"Suspension"** means the slowdown or cessation of your business activities.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

SB 88 02 (Ed. 01 88)

## SELECT BUSINESS POLICY GENERAL ENDORSEMENT

## WATER DAMAGE DEDUCTIBLE

THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies coverage provided by your:

Select Business Policy Building and Personal Property Coverage Form

Deductible

We will pay the amount of your adjusted "loss" in excess of the deductible amount shown below for the cause of "loss" listed (if such cause is covered by this policy), up to the applicable Limit of Insurance:

Causes of "Loss": Any Covered Water (other than flood perils, surface water, mudslide, and/or subsurface water)

Deductible Amount (Per Occurrence): $15,000

Causes of "Loss": All Covered Causes of Loss for which no specific Deductible Amount is shown above (other than 1. earthquake and volcanic eruption, 2. flood perils 3. shown elsewhere in this policy or coverage part and 4. Additional Coverages in the coverage form that specifically state that no deductible applies.)

Deductible Amount (Per Occurrence): $5,000

If Earthquake and Volcanic Eruption are Covered Causes of "Loss," see the deductible amount shown for Earthquake and Volcanic Eruption Coverage Endorsement attached to your policy.

If Flood perils are Covered Causes of "Loss," see the deductible amount shown for Flood Coverage on the Flood Coverage endorsement attached to your policy.

If two or more deductibles would apply in any one occurrence for direct physical loss, only the largest single deductible will apply and that amount will be deducted.

If this policy covers Time Element Loss as Business Income and/or Extra Expense, the deductible amount or waiting period will apply separately from the deductibles for direct physical loss shown above or elsewhere.

All other terms and conditions remain unchanged.

SB 81 72 (Ed. 06 13)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SELECT BUSINESS POLICY
## EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

SELECT BUSINESS POLICY BUILDING AND PERSONAL PROPERTY COVERAGE FORM
SELECT BUSINESS POLICY BUSINESS INCOME AND EXTRA EXPENSE COVERAGE FORM
SELECT BUSINESS POLICY BUSINESS INCOME WITHOUT EXTRA EXPENSE COVERAGE FORM
SELECT BUSINESS POLICY EXTRA EXPENSE COVERAGE FORM

**A.** The exclusion set forth in paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "Fungus," Wet Rot or Dry Rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

**C.** With respect to any loss or damage subject to the exclusion in paragraph **B.**, such exclusion supersedes any exclusion relating to "pollutants."

**D.** The following provisions in this Coverage Part or Policy are hereby amended to remove reference to bacteria:

1. Exclusion of "Fungus," Wet Rot, Dry Rot and Bacteria; and

2. Additional Coverage - Limited Coverage for "Fungus," Wet Rot, Dry Rot and Bacteria, including any endorsement increasing the scope or amount of coverage.

**E.** The terms of the exclusion in paragraph **B.**, or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy.

Includes copyrighted material of ISO Properties, Inc., with its permission.

# EXHIBIT B

 **Engle Martin & Associates**

5565 Glenridge Connector NE | Suite 900
Atlanta, Georgia 30342

|  |  |
|---|---|
| Insured: | Fairington Park Condo Assoc |
| Property: | • 1101-1204 Par Three Way |
|  | Lithonia, , GA 30038 |

Claim Rep.:  Joel Steber

Estimator:  Joel Steber

**Claim Number: A00299011**          **Policy Number: MAC0323134 07 00**          **Type of Loss: <NONE>**

| Date Contacted: | 7/14/2020 12:00 AM |  |  |
|---|---|---|---|
| Date of Loss: | 7/21/2018 12:00 AM | Date Received: | 7/14/2020 12:00 AM |
| Date Inspected: | 7/23/2020 12:00 AM | Date Entered: | 2/16/2021 9:22 AM |

| Price List: | GAAT8X_NOV20 |
|---|---|
|  | Restoration/Service/Remodel |
| Estimate: | 2021-02-16-0922 |

**VERY IMPORTANT! - PLEASE READ:** This document is an initial estimate ONLY concerning the probable cost of repair of the damage observed during inspection of the claimed loss. Additional inspection and/or investigation of the cause of loss and the damage related thereto may be required before this estimate can be finalized. Please note that this document is NOT a promise or agreement of payment for the claimed loss from Your insurance company or Engle Martin & Associates (EMA). Instead, this document will be forwarded to Your insurance company for coverage and payment review and decision. This estimate is subject to final review and approval by Your insurance company and is thus subject to further revisions until final written approval is received. All final payment and coverage decisions are made by Your insurance company and NOT by EMA. While You await final review and approval by Your insurance company, we request that You present this estimate to Your contractor for its review and comment. In the event of a scope of work or pricing discrepancy between this estimate and Your contractor's estimate, if any, we will work with You and Your contractor to attempt to resolve any such discrepancy; however, the authority to make a final decision on any such discrepancy belongs to Your insurance company, not EMA. Finally, please note that You are responsible for selecting and hiring the contractor(s) that You want to perform Your repair work. Neither Your insurance company, nor EMA guarantee the work of any contractor, nor do either inspect or monitor the work of any contractor. It is solely Your responsibility to make sure that Your repair work is properly and timely completed.



**Engle Martin & Associates**

5565 Glenridge Connector NE | Suite 900
Atlanta, Georgia 30342

**2021-02-16-0922**

### Building 1

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|
| 35 damaged shingles per Beech Consulting report | | | |
| Remove 3 tab - 25 yr. - composition shingle roofing (per SHINGLE) | 105.00 EA @ | 5.85 = | 614.25 |
| 3 tab - 25 yr. - composition shingle roofing (per SHINGLE) | 105.00 EA @ | 13.52 = | 1,419.60 |

### Building 2

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|
| 3 damaged shingles plus one slope per Beech Consulting report | | | |
| Remove 3 tab - 25 yr. - composition shingle roofing - incl. felt | 9.00 SQ @ | 49.17 = | 442.53 |
| 3 tab - 25 yr. - composition shingle roofing - incl. felt | 9.00 SQ @ | 213.10 = | 1,917.90 |

### Building 3

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|
| 20 damaged shingles per Beech Consulting report | | | |
| Remove 3 tab - 25 yr. - composition shingle roofing (per SHINGLE) | 60.00 EA @ | 5.85 = | 351.00 |
| 3 tab - 25 yr. - composition shingle roofing (per SHINGLE) | 60.00 EA @ | 13.52 = | 811.20 |

### Building 4

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|
| 25 damaged shingles per Beech Consulting report | | | |
| Remove 3 tab - 25 yr. - composition shingle roofing (per SHINGLE) | 75.00 EA @ | 5.85 = | 438.75 |
| 3 tab - 25 yr. - composition shingle roofing (per SHINGLE) | 75.00 EA @ | 13.52 = | 1,014.00 |

### Building 5

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|
| 20 damaged shingles per Beech Consulting report | | | |
| Remove 3 tab - 25 yr. - composition shingle roofing (per SHINGLE) | 60.00 EA @ | 5.85 = | 351.00 |
| 3 tab - 25 yr. - composition shingle roofing (per SHINGLE) | 60.00 EA @ | 13.52 = | 811.20 |



**Engle Martin & Associates**

5565 Glenridge Connector NE | Suite 900
Atlanta, Georgia 30342

**CONTINUED - Building 5**

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|
| | | | |

**Building 6**

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|
| 25 damaged shingles per Beech Consulting report | | | |
| Remove 3 tab - 25 yr. - composition shingle roofing (per SHINGLE) | 75.00 EA @ | 5.85 = | 438.75 |
| 3 tab - 25 yr. - composition shingle roofing (per SHINGLE) | 75.00 EA @ | 13.52 = | 1,014.00 |

**Building 7**

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|
| 20 damaged shingles per Beech Consulting report | | | |
| Remove 3 tab - 25 yr. - composition shingle roofing (per SHINGLE) | 60.00 EA @ | 5.85 = | 351.00 |
| 3 tab - 25 yr. - composition shingle roofing (per SHINGLE) | 60.00 EA @ | 13.52 = | 811.20 |

**Building 8**

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|
| 10 damaged shingles per Beech Consulting report | | | |
| Remove 3 tab - 25 yr. - composition shingle roofing (per SHINGLE) | 30.00 EA @ | 5.85 = | 175.50 |
| 3 tab - 25 yr. - composition shingle roofing (per SHINGLE) | 30.00 EA @ | 13.52 = | 405.60 |

**Building 9**

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|
| 20 damaged shingles per Beech Consulting report | | | |
| Remove 3 tab - 25 yr. - composition shingle roofing (per SHINGLE) | 60.00 EA @ | 5.85 = | 351.00 |
| 3 tab - 25 yr. - composition shingle roofing (per SHINGLE) | 60.00 EA @ | 13.52 = | 811.20 |

 **Engle Martin & Associates**

5565 Glenridge Connector NE | Suite 900
Atlanta, Georgia 30342

**Building 10**

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|
| 5 damaged shingles per Beech Consulting report | | | |
| Remove 3 tab - 25 yr. - composition shingle roofing (per SHINGLE) | 15.00 EA @ | 5.85 = | 87.75 |
| 3 tab - 25 yr. - composition shingle roofing (per SHINGLE) | 15.00 EA @ | 13.52 = | 202.80 |

**General**

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|
| Roofer - per hour | 40.00 HR @ | 116.02 = | 4,640.80 |
| Additional roofing labor hours for three story access and associated repairs | | | |

 **Engle Martin & Associates**

5565 Glenridge Connector NE | Suite 900
Atlanta, Georgia 30342

## Summary for Building

| | |
|---|---:|
| Line Item Total | 17,461.03 |
| Material Sales Tax | 148.82 |
| **Replacement Cost Value** | **$17,609.85** |
| **Net Claim** | **$17,609.85** |

Joel Steber



**Engle Martin & Associates**

5565 Glenridge Connector NE | Suite 900
Atlanta, Georgia 30342

## Recap of Taxes

|  | Material Sales Tax (8%) |
|---|---|
| **Line Items** | 148.82 |
| **Total** | 148.82 |



**Engle Martin & Associates**

5565 Glenridge Connector NE | Suite 900
Atlanta, Georgia 30342

## Recap by Room

**Estimate: 2021-02-16-0922**

| | | |
|---|---:|---:|
| Building 1 | 2,033.85 | 11.65% |
| Building 2 | 2,360.43 | 13.52% |
| Building 3 | 1,162.20 | 6.66% |
| Building 4 | 1,452.75 | 8.32% |
| Building 5 | 1,162.20 | 6.66% |
| Building 6 | 1,452.75 | 8.32% |
| Building 7 | 1,162.20 | 6.66% |
| Building 8 | 581.10 | 3.33% |
| Building 9 | 1,162.20 | 6.66% |
| Building 10 | 290.55 | 1.66% |
| General | 4,640.80 | 26.58% |
| **Subtotal of Areas** | **17,461.03** | **100.00%** |
| **Total** | **17,461.03** | **100.00%** |



**Engle Martin & Associates**

5565 Glenridge Connector NE | Suite 900
Atlanta, Georgia 30342

## Recap by Category

| Items | Total | % |
|---|---|---|
| **GENERAL DEMOLITION** | 3,601.53 | 20.45% |
| **ROOFING** | 13,859.50 | 78.70% |
| **Subtotal** | 17,461.03 | 99.15% |
| **Material Sales Tax** | 148.82 | 0.85% |
| **Total** | 17,609.85 | 100.00% |

# EXHIBIT C



120 Regency PKWY. Suite 114
Omaha, Ne. 68114
www.Premier-Claims.com
(877)219-0049

Insured:    Fairington Park Condo Assoc
Property:   1101 Par Four Way
            Lithonia, GA 30038

**Claim Number:**                     **Policy Number:** MAC 0323134 07 00          **Type of Loss:** Hail/Wind

Date of Loss:    7/21/2018                        Date Received:   7/8/2020
Date Inspected:                                   Date Entered:    7/8/2020 7:25 AM

Price List:     GAAT8X_JUL20
                Restoration/Service/Remodel
Estimate:       1101_PAR_FOUR_WAY

Estimate Disclaimers

General disclaimer – reserve right to change estimate

This estimate and information is the opinion of Premier Claims, based on the knowledge and experience of Premier Claims licensed adjusters. It is understood there may be additional information, limitations within the insured ' s policy, or other mitigating circumstances which the insured has not presented which may alter the initial estimate presented in this application. Premier Claims reserves the right to alter its initial estimation based on further information as it becomes available. Premier Claims also reserves the right to alter this estimation upon the discretion of Premier Claims adjusters at any point in time.

Please note, your adjuster should not depreciate overhead, profit, or labor.



PREMIER
claims

120 Regency PKWY. Suite 114
Omaha, Ne. 68114
www.Premier-Claims.com
(877)219-0049

## 1101_PAR_FOUR_WAY

### 001

**001**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 1. Remove 3 tab - 25 yr. - comp. shingle roofing - w/out felt | 76.79 SQ | 109.01 | 0.00 | 1,674.18 | 10,045.06 | (0.00) | 10,045.06 |
| 2. Ice & water barrier | 2,478.75 SF | 1.44 | 65.44 | 726.96 | 4,361.80 | (0.00) | 4,361.80 |
| 3. Roofing felt - 15 lb. | 80.63 SQ | 25.16 | 35.09 | 412.76 | 2,476.50 | (0.00) | 2,476.50 |
| 4. R&R Drip edge/gutter apron | 389.83 LF | 2.84 | 28.07 | 227.04 | 1,362.23 | (0.00) | 1,362.23 |
| 5. Asphalt starter - universal starter course | 389.83 LF | 1.78 | 18.09 | 142.40 | 854.39 | (0.00) | 854.39 |
| 6. 3 tab - 25 yr. - comp. shingle roofing - w/out felt | 88.33 SQ | 167.75 | 535.00 | 3,070.48 | 18,422.84 | (0.00) | 18,422.84 |
| 7. R&R Ridge cap - composition shingles | 366.00 LF | 5.41 | 26.64 | 401.32 | 2,408.02 | (0.00) | 2,408.02 |
| 8. R&R Gable cornice strip - 3 tab - 2 stories of greater | 44.50 LF | 14.64 | 8.62 | 132.00 | 792.10 | (0.00) | 792.10 |
| 9. R&R Gable cornice return - 3 tab - 2 stories or greater | 8.00 EA | 102.92 | 3.12 | 165.30 | 991.78 | (0.00) | 991.78 |
| 10. R&R Aluminum sidewall/endwall flashing - mill finish | 60.50 LF | 6.59 | 13.02 | 82.34 | 494.06 | (0.00) | 494.06 |
| 11. R&R Flashing - pipe jack | 8.00 EA | 50.15 | 6.64 | 81.56 | 489.40 | (0.00) | 489.40 |
| 12. R&R Roof vent - turtle type - Metal | 16.00 EA | 73.78 | 27.64 | 241.62 | 1,449.74 | (0.00) | 1,449.74 |
| 13. Remove Additional charge for high roof (2 stories or greater) | 76.79 SQ | 11.25 | 0.00 | 172.78 | 1,036.67 | (0.00) | 1,036.67 |
| 14. Additional charge for high roof (2 stories or greater) | 88.31 SQ | 15.35 | 0.00 | 271.12 | 1,626.68 | (0.00) | 1,626.68 |
| 15. R&R Gutter / downspout - aluminum - up to 5" | 471.00 LF | 6.49 | 107.76 | 632.92 | 3,797.47 | (0.00) | 3,797.47 |
| **Total: 001** | | | **875.13** | **8,434.78** | **50,608.74** | **0.00** | **50,608.74** |

**002**

**002**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 16. Remove 3 tab - 25 yr. - comp. shingle roofing - w/out felt | 76.79 SQ | 109.01 | 0.00 | 1,674.18 | 10,045.06 | (0.00) | 10,045.06 |
| 17. Ice & water barrier | 2,478.75 SF | 1.44 | 65.44 | 726.96 | 4,361.80 | (0.00) | 4,361.80 |
| 18. Roofing felt - 15 lb. | 80.63 SQ | 25.16 | 35.09 | 412.76 | 2,476.50 | (0.00) | 2,476.50 |
| 19. R&R Drip edge/gutter apron | 389.83 LF | 2.84 | 28.07 | 227.04 | 1,362.23 | (0.00) | 1,362.23 |
| 20. Asphalt starter - universal starter course | 389.83 LF | 1.78 | 18.09 | 142.40 | 854.39 | (0.00) | 854.39 |
| 21. 3 tab - 25 yr. - comp. shingle roofing - w/out felt | 88.33 SQ | 167.75 | 535.00 | 3,070.48 | 18,422.84 | (0.00) | 18,422.84 |
| 22. R&R Ridge cap - composition shingles | 366.00 LF | 5.41 | 26.64 | 401.32 | 2,408.02 | (0.00) | 2,408.02 |
| 23. R&R Gable cornice strip - 3 tab - 2 stories of greater | 44.50 LF | 14.64 | 8.62 | 132.00 | 792.10 | (0.00) | 792.10 |



PREMIER
claims

120 Regency PKWY. Suite 114
Omaha, Ne. 68114
www.Premier-Claims.com
(877)219-0049

## CONTINUED - 002

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 24. R&R Gable cornice return - 3 tab - 2 stories or greater | 8.00 EA | 102.92 | 3.12 | 165.30 | 991.78 | (0.00) | 991.78 |
| 25. R&R Aluminum sidewall/endwall flashing - mill finish | 60.50 LF | 6.59 | 13.02 | 82.34 | 494.06 | (0.00) | 494.06 |
| 26. R&R Flashing - pipe jack | 8.00 EA | 50.15 | 6.64 | 81.56 | 489.40 | (0.00) | 489.40 |
| 27. R&R Roof vent - turtle type - Metal | 16.00 EA | 73.78 | 27.64 | 241.62 | 1,449.74 | (0.00) | 1,449.74 |
| 28. Remove Additional charge for high roof (2 stories or greater) | 76.79 SQ | 11.25 | 0.00 | 172.78 | 1,036.67 | (0.00) | 1,036.67 |
| 29. Additional charge for high roof (2 stories or greater) | 88.31 SQ | 15.35 | 0.00 | 271.12 | 1,626.68 | (0.00) | 1,626.68 |
| 30. R&R Gutter / downspout - aluminum - up to 5" | 471.00 LF | 6.49 | 107.76 | 632.92 | 3,797.47 | (0.00) | 3,797.47 |
| **Total: 002** | | | **875.13** | **8,434.78** | **50,608.74** | **0.00** | **50,608.74** |

### 003

003

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 31. Remove 3 tab - 25 yr. - comp. shingle roofing - w/out felt | 76.79 SQ | 109.01 | 0.00 | 1,674.18 | 10,045.06 | (0.00) | 10,045.06 |
| 32. Ice & water barrier | 2,478.75 SF | 1.44 | 65.44 | 726.96 | 4,361.80 | (0.00) | 4,361.80 |
| 33. Roofing felt - 15 lb. | 80.63 SQ | 25.16 | 35.09 | 412.76 | 2,476.50 | (0.00) | 2,476.50 |
| 34. R&R Drip edge/gutter apron | 389.83 LF | 2.84 | 28.07 | 227.04 | 1,362.23 | (0.00) | 1,362.23 |
| 35. Asphalt starter - universal starter course | 389.83 LF | 1.78 | 18.09 | 142.40 | 854.39 | (0.00) | 854.39 |
| 36. 3 tab - 25 yr. - comp. shingle roofing - w/out felt | 88.33 SQ | 167.75 | 535.00 | 3,070.48 | 18,422.84 | (0.00) | 18,422.84 |
| 37. R&R Ridge cap - composition shingles | 366.00 LF | 5.41 | 26.64 | 401.32 | 2,408.02 | (0.00) | 2,408.02 |
| 38. R&R Gable cornice strip - 3 tab - 2 stories of greater | 44.50 LF | 14.64 | 8.62 | 132.00 | 792.10 | (0.00) | 792.10 |
| 39. R&R Gable cornice return - 3 tab - 2 stories or greater | 8.00 EA | 102.92 | 3.12 | 165.30 | 991.78 | (0.00) | 991.78 |
| 40. R&R Aluminum sidewall/endwall flashing - mill finish | 60.50 LF | 6.59 | 13.02 | 82.34 | 494.06 | (0.00) | 494.06 |
| 41. R&R Flashing - pipe jack | 8.00 EA | 50.15 | 6.64 | 81.56 | 489.40 | (0.00) | 489.40 |
| 42. R&R Roof vent - turtle type - Metal | 16.00 EA | 73.78 | 27.64 | 241.62 | 1,449.74 | (0.00) | 1,449.74 |
| 43. Remove Additional charge for high roof (2 stories or greater) | 76.79 SQ | 11.25 | 0.00 | 172.78 | 1,036.67 | (0.00) | 1,036.67 |
| 44. Additional charge for high roof (2 stories or greater) | 88.31 SQ | 15.35 | 0.00 | 271.12 | 1,626.68 | (0.00) | 1,626.68 |

1101_PAR_FOUR_WAY

7/10/2020          Page: 3



**PREMIER**
claims

120 Regency PKWY. Suite 114
Omaha, Ne. 68114
www.Premier-Claims.com
(877)219-0049

## CONTINUED - 003

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 45. R&R Gutter / downspout - aluminum - up to 5" | 471.00 LF | 6.49 | 107.76 | 632.92 | 3,797.47 | (0.00) | 3,797.47 |
| **Total: 003** | | | **875.13** | **8,434.78** | **50,608.74** | **0.00** | **50,608.74** |

**004**

004

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 46. Remove 3 tab - 25 yr. - comp. shingle roofing - w/out felt | 76.79 SQ | 109.01 | 0.00 | 1,674.18 | 10,045.06 | (0.00) | 10,045.06 |
| 47. Ice & water barrier | 2,478.75 SF | 1.44 | 65.44 | 726.96 | 4,361.80 | (0.00) | 4,361.80 |
| 48. Roofing felt - 15 lb. | 80.63 SQ | 25.16 | 35.09 | 412.76 | 2,476.50 | (0.00) | 2,476.50 |
| 49. R&R Drip edge/gutter apron | 389.83 LF | 2.84 | 28.07 | 227.04 | 1,362.23 | (0.00) | 1,362.23 |
| 50. Asphalt starter - universal starter course | 389.83 LF | 1.78 | 18.09 | 142.40 | 854.39 | (0.00) | 854.39 |
| 51. 3 tab - 25 yr. - comp. shingle roofing - w/out felt | 88.33 SQ | 167.75 | 535.00 | 3,070.48 | 18,422.84 | (0.00) | 18,422.84 |
| 52. R&R Ridge cap - composition shingles | 366.00 LF | 5.41 | 26.64 | 401.32 | 2,408.02 | (0.00) | 2,408.02 |
| 53. R&R Gable cornice strip - 3 tab - 2 stories of greater | 44.50 LF | 14.64 | 8.62 | 132.00 | 792.10 | (0.00) | 792.10 |
| 54. R&R Gable cornice return - 3 tab - 2 stories or greater | 8.00 EA | 102.92 | 3.12 | 165.30 | 991.78 | (0.00) | 991.78 |
| 55. R&R Aluminum sidewall/endwall flashing - mill finish | 60.50 LF | 6.59 | 13.02 | 82.34 | 494.06 | (0.00) | 494.06 |
| 56. R&R Flashing - pipe jack | 8.00 EA | 50.15 | 6.64 | 81.56 | 489.40 | (0.00) | 489.40 |
| 57. R&R Roof vent - turtle type - Metal | 16.00 EA | 73.78 | 27.64 | 241.62 | 1,449.74 | (0.00) | 1,449.74 |
| 58. Remove Additional charge for high roof (2 stories or greater) | 76.79 SQ | 11.25 | 0.00 | 172.78 | 1,036.67 | (0.00) | 1,036.67 |
| 59. Additional charge for high roof (2 stories or greater) | 88.31 SQ | 15.35 | 0.00 | 271.12 | 1,626.68 | (0.00) | 1,626.68 |
| 60. R&R Gutter / downspout - aluminum - up to 5" | 471.00 LF | 6.49 | 107.76 | 632.92 | 3,797.47 | (0.00) | 3,797.47 |
| **Total: 004** | | | **875.13** | **8,434.78** | **50,608.74** | **0.00** | **50,608.74** |

**005**

005



120 Regency PKWY. Suite 114
Omaha, Ne. 68114
www.Premier-Claims.com
(877)219-0049

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 61. Remove 3 tab - 25 yr. - comp. shingle roofing - w/out felt | 76.79 SQ | 109.01 | 0.00 | 1,674.18 | 10,045.06 | (0.00) | 10,045.06 |
| 62. Ice & water barrier | 2,478.75 SF | 1.44 | 65.44 | 726.96 | 4,361.80 | (0.00) | 4,361.80 |
| 63. Roofing felt - 15 lb. | 80.63 SQ | 25.16 | 35.09 | 412.76 | 2,476.50 | (0.00) | 2,476.50 |
| 64. R&R Drip edge/gutter apron | 389.83 LF | 2.84 | 28.07 | 227.04 | 1,362.23 | (0.00) | 1,362.23 |
| 65. Asphalt starter - universal starter course | 389.83 LF | 1.78 | 18.09 | 142.40 | 854.39 | (0.00) | 854.39 |
| 66. 3 tab - 25 yr. - comp. shingle roofing - w/out felt | 88.33 SQ | 167.75 | 535.00 | 3,070.48 | 18,422.84 | (0.00) | 18,422.84 |
| 67. R&R Ridge cap - composition shingles | 366.00 LF | 5.41 | 26.64 | 401.32 | 2,408.02 | (0.00) | 2,408.02 |
| 68. R&R Gable cornice strip - 3 tab - 2 stories of greater | 44.50 LF | 14.64 | 8.62 | 132.00 | 792.10 | (0.00) | 792.10 |
| 69. R&R Gable cornice return - 3 tab - 2 stories or greater | 8.00 EA | 102.92 | 3.12 | 165.30 | 991.78 | (0.00) | 991.78 |
| 70. R&R Aluminum sidewall/endwall flashing - mill finish | 60.50 LF | 6.59 | 13.02 | 82.34 | 494.06 | (0.00) | 494.06 |
| 71. R&R Flashing - pipe jack | 8.00 EA | 50.15 | 6.64 | 81.56 | 489.40 | (0.00) | 489.40 |
| 72. R&R Roof vent - turtle type - Metal | 16.00 EA | 73.78 | 27.64 | 241.62 | 1,449.74 | (0.00) | 1,449.74 |
| 73. Remove Additional charge for high roof (2 stories or greater) | 76.79 SQ | 11.25 | 0.00 | 172.78 | 1,036.67 | (0.00) | 1,036.67 |
| 74. Additional charge for high roof (2 stories or greater) | 88.31 SQ | 15.35 | 0.00 | 271.12 | 1,626.68 | (0.00) | 1,626.68 |
| 75. R&R Gutter / downspout - aluminum - up to 5" | 471.00 LF | 6.49 | 107.76 | 632.92 | 3,797.47 | (0.00) | 3,797.47 |
| **Total:  005** | | | **875.13** | **8,434.78** | **50,608.74** | **0.00** | **50,608.74** |

### 006

**006**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 76. Remove 3 tab - 25 yr. - comp. shingle roofing - w/out felt | 76.79 SQ | 109.01 | 0.00 | 1,674.18 | 10,045.06 | (0.00) | 10,045.06 |
| 77. Ice & water barrier | 2,478.75 SF | 1.44 | 65.44 | 726.96 | 4,361.80 | (0.00) | 4,361.80 |
| 78. Roofing felt - 15 lb. | 80.63 SQ | 25.16 | 35.09 | 412.76 | 2,476.50 | (0.00) | 2,476.50 |
| 79. R&R Drip edge/gutter apron | 389.83 LF | 2.84 | 28.07 | 227.04 | 1,362.23 | (0.00) | 1,362.23 |
| 80. Asphalt starter - universal starter course | 389.83 LF | 1.78 | 18.09 | 142.40 | 854.39 | (0.00) | 854.39 |
| 81. 3 tab - 25 yr. - comp. shingle roofing - w/out felt | 88.33 SQ | 167.75 | 535.00 | 3,070.48 | 18,422.84 | (0.00) | 18,422.84 |
| 82. R&R Ridge cap - composition shingles | 366.00 LF | 5.41 | 26.64 | 401.32 | 2,408.02 | (0.00) | 2,408.02 |
| 83. R&R Gable cornice strip - 3 tab - 2 stories of greater | 44.50 LF | 14.64 | 8.62 | 132.00 | 792.10 | (0.00) | 792.10 |
| 84. R&R Gable cornice return - 3 tab - 2 stories or greater | 8.00 EA | 102.92 | 3.12 | 165.30 | 991.78 | (0.00) | 991.78 |
| 85. R&R Aluminum sidewall/endwall flashing - mill finish | 60.50 LF | 6.59 | 13.02 | 82.34 | 494.06 | (0.00) | 494.06 |



120 Regency PKWY. Suite 114
Omaha, Ne. 68114
www.Premier-Claims.com
(877)219-0049

## CONTINUED - 006

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 86. R&R Flashing - pipe jack | 8.00 EA | 50.15 | 6.64 | 81.56 | 489.40 | (0.00) | 489.40 |
| 87. R&R Roof vent - turtle type - Metal | 16.00 EA | 73.78 | 27.64 | 241.62 | 1,449.74 | (0.00) | 1,449.74 |
| 88. Remove Additional charge for high roof (2 stories or greater) | 76.79 SQ | 11.25 | 0.00 | 172.78 | 1,036.67 | (0.00) | 1,036.67 |
| 89. Additional charge for high roof (2 stories or greater) | 88.31 SQ | 15.35 | 0.00 | 271.12 | 1,626.68 | (0.00) | 1,626.68 |
| 90. R&R Gutter / downspout - aluminum - up to 5" | 471.00 LF | 6.49 | 107.76 | 632.92 | 3,797.47 | | 3,797.47 |
| **Total: 006** | | | **875.13** | **8,434.78** | **50,608.74** | **0.00** | **50,608.74** |

### 007

**007**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 91. R&R 3 tab - 25 yr. - comp. shingle roofing - w/out felt | 76.79 SQ | 109.01 | 0.00 | 1,674.18 | 10,045.06 | (0.00) | 10,045.06 |
| 92. Ice & water barrier | 2,478.75 SF | 1.44 | 65.44 | 726.96 | 4,361.80 | (0.00) | 4,361.80 |
| 93. Roofing felt - 15 lb. | 80.63 SQ | 25.16 | 35.09 | 412.76 | 2,476.50 | (0.00) | 2,476.50 |
| 94. R&R Drip edge/gutter apron | 389.83 LF | 2.84 | 28.07 | 227.04 | 1,362.23 | (0.00) | 1,362.23 |
| 95. Asphalt starter - universal starter course | 389.83 LF | 1.78 | 18.09 | 142.40 | 854.39 | (0.00) | 854.39 |
| 96. 3 tab - 25 yr. - comp. shingle roofing - w/out felt | 88.33 SQ | 167.75 | 535.00 | 3,070.48 | 18,422.84 | (0.00) | 18,422.84 |
| 97. R&R Ridge cap - composition shingles | 366.00 LF | 5.41 | 26.64 | 401.32 | 2,408.02 | (0.00) | 2,408.02 |
| 98. R&R Gable cornice strip - 3 tab - 2 stories of greater | 44.50 LF | 14.64 | 8.62 | 132.00 | 792.10 | (0.00) | 792.10 |
| 99. R&R Gable cornice return - 3 tab - 2 stories or greater | 8.00 EA | 102.92 | 3.12 | 165.30 | 991.78 | (0.00) | 991.78 |
| 100. R&R Aluminum sidewall/endwall flashing - mill finish | 60.50 LF | 6.59 | 13.02 | 82.34 | 494.06 | (0.00) | 494.06 |
| 101. R&R Flashing - pipe jack | 8.00 EA | 50.15 | 6.64 | 81.56 | 489.40 | (0.00) | 489.40 |
| 102. R&R Roof vent - turtle type - Metal | 16.00 EA | 73.78 | 27.64 | 241.62 | 1,449.74 | (0.00) | 1,449.74 |
| 103. Remove Additional charge for high roof (2 stories or greater) | 76.79 SQ | 11.25 | 0.00 | 172.78 | 1,036.67 | (0.00) | 1,036.67 |
| 104. Additional charge for high roof (2 stories or greater) | 88.31 SQ | 15.35 | 0.00 | 271.12 | 1,626.68 | (0.00) | 1,626.68 |
| 105. R&R Gutter / downspout - aluminum - up to 5" | 471.00 LF | 6.49 | 107.76 | 632.92 | 3,797.47 | (0.00) | 3,797.47 |
| **Total: 007** | | | **875.13** | **8,434.78** | **50,608.74** | **0.00** | **50,608.74** |


PREMIER
claims

120 Regency PKWY. Suite 114
Omaha, Ne. 68114
www.Premier-Claims.com
(877)219-0049

**008**

**008**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 106. Remove 3 tab - 25 yr. - comp. shingle roofing - w/out felt | 76.79 SQ | 109.01 | 0.00 | 1,674.18 | 10,045.06 | (0.00) | 10,045.06 |
| 107. Ice & water barrier | 2,478.75 SF | 1.44 | 65.44 | 726.96 | 4,361.80 | (0.00) | 4,361.80 |
| 108. Roofing felt - 15 lb. | 80.63 SQ | 25.16 | 35.09 | 412.76 | 2,476.50 | (0.00) | 2,476.50 |
| 109. R&R Drip edge/gutter apron | 389.83 LF | 2.84 | 28.07 | 227.04 | 1,362.23 | (0.00) | 1,362.23 |
| 110. Asphalt starter - universal starter course | 389.83 LF | 1.78 | 18.09 | 142.40 | 854.39 | (0.00) | 854.39 |
| 111. 3 tab - 25 yr. - comp. shingle roofing - w/out felt | 88.33 SQ | 167.75 | 535.00 | 3,070.48 | 18,422.84 | (0.00) | 18,422.84 |
| 112. R&R Ridge cap - composition shingles | 366.00 LF | 5.41 | 26.64 | 401.32 | 2,408.02 | (0.00) | 2,408.02 |
| 113. R&R Gable cornice strip - 3 tab - 2 stories of greater | 44.50 LF | 14.64 | 8.62 | 132.00 | 792.10 | (0.00) | 792.10 |
| 114. R&R Gable cornice return - 3 tab - 2 stories or greater | 8.00 EA | 102.92 | 3.12 | 165.30 | 991.78 | (0.00) | 991.78 |
| 115. R&R Aluminum sidewall/endwall flashing - mill finish | 60.50 LF | 6.59 | 13.02 | 82.34 | 494.06 | (0.00) | 494.06 |
| 116. R&R Flashing - pipe jack | 8.00 EA | 50.15 | 6.64 | 81.56 | 489.40 | (0.00) | 489.40 |
| 117. R&R Roof vent - turtle type - Metal | 16.00 EA | 73.78 | 27.64 | 241.62 | 1,449.74 | (0.00) | 1,449.74 |
| 118. Remove Additional charge for high roof (2 stories or greater) | 76.79 SQ | 11.25 | 0.00 | 172.78 | 1,036.67 | (0.00) | 1,036.67 |
| 119. Additional charge for high roof (2 stories or greater) | 88.31 SQ | 15.35 | 0.00 | 271.12 | 1,626.68 | (0.00) | 1,626.68 |
| 120. R&R Gutter / downspout - aluminum - up to 5" | 471.00 LF | 6.49 | 107.76 | 632.92 | 3,797.47 | (0.00) | 3,797.47 |
| **Total: 008** | | | 875.13 | 8,434.78 | 50,608.74 | 0.00 | 50,608.74 |

**General**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 121. Commercial Supervision / Project Management - per hour | 128.00 HR | 64.50 | 0.00 | 1,651.20 | 9,907.20 | (0.00) | 9,907.20 |
| 122. General Laborer - per hour | 128.00 HR | 36.27 | 0.00 | 928.52 | 5,571.08 | (0.00) | 5,571.08 |
| 123. Dumpster load - Approx. 12 yards, 1-3 tons of debris | 8.00 EA | 375.00 | 0.00 | 600.00 | 3,600.00 | (0.00) | 3,600.00 |
| 124. Temporary toilet - Minimum rental charge | 1.00 EA | 88.00 | 0.00 | 17.60 | 105.60 | (0.00) | 105.60 |
| 125. Traffic cones (per unit, per day) | 160.00 DA | 0.83 | 0.00 | 26.56 | 159.36 | (0.00) | 159.36 |
| 126. Boom lift - 50'-60' reach (per week) | 2.00 WK | 1,253.38 | 0.00 | 501.36 | 3,008.12 | (0.00) | 3,008.12 |
| 127. Rental equipment delivery / mobilization (Bid item) | 2.00 EA | 250.00 | 0.00 | 100.00 | 600.00 | (0.00) | 600.00 |
| 128. Caution tape | 2,000.00 LF | 0.08 | 1.60 | 32.32 | 193.92 | (0.00) | 193.92 |



120 Regency PKWY. Suite 114
Omaha, Ne. 68114
www.Premier-Claims.com
(877)219-0049

**CONTINUED - General**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 129.  Taxes, insurance, permits & fees (Bid Item) | 1.00 EA | 0.00 | 0.00 | 0.00 | 0.00 | (0.00) | 0.00 |
| **Totals:  General** | | | **1.60** | **3,857.56** | **23,145.28** | **0.00** | **23,145.28** |

**Labor Minimums Applied**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 130.  Temporary repair services labor minimum | 1.00 EA | 64.08 | 0.00 | 12.82 | 76.90 | (0.00) | 76.90 |
| **Totals:  Labor Minimums Applied** | | | **0.00** | **12.82** | **76.90** | **0.00** | **76.90** |
| **Line Item Totals:  1101_PAR_FOUR_WAY** | | | **7,002.64** | **71,348.62** | **428,092.10** | **0.00** | **428,092.10** |



120 Regency PKWY. Suite 114
Omaha, Ne. 68114
www.Premier-Claims.com
(877)219-0049

## Summary for Dwelling

| | |
|---|---|
| Line Item Total | 349,740.84 |
| Material Sales Tax | 7,002.64 |
| Subtotal | 356,743.48 |
| Overhead | 35,674.31 |
| Profit | 35,674.31 |
| **Replacement Cost Value** | **$428,092.10** |
| **Net Claim** | **$428,092.10** |



120 Regency PKWY. Suite 114
Omaha, Ne. 68114
www.Premier-Claims.com
(877)219-0049

## Recap of Taxes, Overhead and Profit

|  | Overhead (10%) | Profit (10%) | Material Sales Tax (8%) | Storage Rental Tax (8%) | Local Food Tax (4%) |
|---|---|---|---|---|---|
| **Line Items** | 35,674.31 | 35,674.31 | 7,002.64 | 0.00 | 0.00 |
| **Total** | **35,674.31** | **35,674.31** | **7,002.64** | **0.00** | **0.00** |



120 Regency PKWY. Suite 114
Omaha, Ne. 68114
www.Premier-Claims.com
(877)219-0049

## Recap by Room

**Estimate: 1101_PAR_FOUR_WAY**

| | | |
|---|---|---|
| **Area: 001** | 41,298.83 | 11.81% |
| Area Subtotal:  001 | 41,298.83 | 11.81% |
| **Area: 002** | 41,298.83 | 11.81% |
| Area Subtotal:  002 | 41,298.83 | 11.81% |
| **Area: 003** | 41,298.83 | 11.81% |
| Area Subtotal:  003 | 41,298.83 | 11.81% |
| **Area: 004** | 41,298.83 | 11.81% |
| Area Subtotal:  004 | 41,298.83 | 11.81% |
| **Area: 005** | 41,298.83 | 11.81% |
| Area Subtotal:  005 | 41,298.83 | 11.81% |
| **Area: 006** | 41,298.83 | 11.81% |
| Area Subtotal:  006 | 41,298.83 | 11.81% |
| **Area: 007** | 41,298.83 | 11.81% |
| Area Subtotal:  007 | 41,298.83 | 11.81% |
| **Area: 008** | 41,298.83 | 11.81% |
| Area Subtotal:  008 | 41,298.83 | 11.81% |
| **General** | 19,286.12 | 5.51% |
| **Labor Minimums Applied** | 64.08 | 0.02% |
| **Subtotal of Areas** | 349,740.84 | 100.00% |
| **Total** | 349,740.84 | 100.00% |



120 Regency PKWY. Suite 114
Omaha, Ne. 68114
www.Premier-Claims.com
(877)219-0049

## Recap by Category

| O&P Items | Total | % |
|---|---|---|
| GENERAL DEMOLITION | 95,894.56 | 22.40% |
| HEAVY EQUIPMENT | 3,006.76 | 0.70% |
| LABOR ONLY | 12,898.56 | 3.01% |
| ROOFING | 215,905.44 | 50.43% |
| SOFFIT, FASCIA, & GUTTER | 21,590.64 | 5.04% |
| TEMPORARY REPAIRS | 444.88 | 0.10% |
| O&P Items Subtotal | 349,740.84 | 81.70% |
| Material Sales Tax | 7,002.64 | 1.64% |
| Overhead | 35,674.31 | 8.33% |
| Profit | 35,674.31 | 8.33% |
| Total | 428,092.10 | 100.00% |

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| **FAIRINGTON PARK CONDOMINIUM** | ) | |
| **ASSOCIATION, INC. d/b/a FAIRINGTON** | ) | |
| **PARK CONDOMINIUM ASSOCIATION,** | ) | |
| | ) | **CIVIL ACTION FILE NO.:** |
| **Plaintiff,** | ) | <u>2021CV349336</u> |
| | ) | |
| **v.** | ) | |
| | ) | |
| **GREAT AMERICAN** | ) | |
| **INSURANCE COMPANY,** | ) | |
| a foreign corporation, | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS DIRECTED TO DEFENDANT</u>

Comes Now Plaintiff, Fairington Park Condominium Association, Inc. d/b/a Fairington Park Condominium Association, and hereby propounds the following First Set of Interrogatories to the Defendant, Great American Insurance Company, to be answered separately and fully, in writing, under oath and in accordance with Rules of Civil Procedure O.C.G.A. § 9-11-33. You are instructed to provide answers to the following interrogatories within forty-five (45) days of service of this request.

## <u>GENERAL INSTRUCTIONS</u>

1.  You are required to answer and verify the following interrogatories within forty-five (45) days of the date of service.

2.  Each paragraph below shall operate and be construed independently; and, unless otherwise indicated, no paragraph limits the scope of any other paragraph.

3.  In answering these discovery requests, you are required to furnish all information available to You (not merely such information as you know of your own personal knowledge),

including information in the possession of your attorneys and accountants, other persons directly or indirectly employed by or connected with you or your attorneys or accountants, or anyone else acting on your behalf or otherwise subject to your control.

4.  The obligation to answer the interrogatories is intended to be of a continuing nature, and you are required by O.C.G.A. § 9-11-26 to reasonably amend your response if you learn that any prior response is in some material respect incomplete or incorrect, and if the additionally or corrective information has not otherwise been made known to Plaintiff during the discovery process or in writing.

5.  You are instructed that a failure by you to make, amend, or supplement a response in a timely manner or to otherwise comply with O.C.G.A. § 9-11-26 may result in sanctions against You.

6.  The singular includes the plural number, and vice versa. The masculine includes the feminine and neutral genders. The past tense includes the present tense where the clear meaning is distorted by a change of tense.

## DEFINITIONS

As used in these interrogatories, the terms listed below are defined as follows:

1.  "Document" or "documents" means any writing of any kind, including originals and all non-identical copies (whether different from the originals by reason of any notation made on such copies or otherwise), including without limitation correspondence, memoranda, notes, desk calendars, diaries, statistics, letters, telegrams, minutes, contracts, reports, studies, checks, invoices, statements, receipts, returns, warranties, guaranties, summaries, pamphlets, books, prospectuses, interoffice and intra-office communications, offers, notations of any sort of conversation, telephone calls, meetings or other communications,

bulletins, magazines, publications, printed matter, photographs, computer printouts, teletypes, faxes, invoices, worksheets and all drafts, alterations, modifications, changes and amendments of any of the foregoing, tapes, tape recordings, transcripts, graphic or aural records or representations of any kind, and electronic, mechanical or electric records or representations of any kind, or which you have knowledge or which are now or were formally in your actual or constructive possession, custody or control. "Communication" shall mean and include any oral or written utterance, notation, or statement of any nature whatsoever, including but not limited to correspondence, personal conversation, telephone calls, dialogues, discussions, interviews, consultations, telegrams, telexes, cables, memoranda, agreements, notes, and oral, written, or other understandings or agreements. This shall include all written, recorded, or signed statements of any party, including the Policyholder, any adjuster, subcontractor, witnesses, investigators, or agents, representative, or employee of the parties concerning the subject matter of this action.

2. "Identify" shall mean:

   a. when used to refer to a document, means to state the following:

      1. The subject of the document;

      2. The title of the document;

      3. The type of document (e.g., letter, memorandum, telegram, chart);

      4. The date of the document, or if the specific date thereof is unknown, the month and year or other best approximation of such date with reference to other events;

      5. The identity of the person or persons who wrote, contributed to, prepared or originated such document; and

      6.The present or last known location and custodian of the document.

b.   when used in reference to a *person*, "identify" means to state to the fullest extent possible the person's name, present or last known address, present or last known telephone number(s), and, if a natural person, the person's employer and position of employment at the time(s) in question.

c.   when used in reference to a *conversation* or *communication*, "identify" means to state the date and length of the communication, the identity of all parties to the communication, the identity of all other witnesses to the communication, the place where the communication took place (if the communication did not take place in person, set forth the location of each party to and each witness to the communication), and the general subject matter(s) of the communication.

d.   when used in reference to a *claim*, "identify" means to state the date and location the claim arose, the location the claim was defended, the names of the parties involved, the case style, the amount in controversy, and the general nature of the claim.

e.   "Relating to" any given subject means any document, communication, or statement that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, touches upon, or is in any manner whatsoever pertinent to that subject and supports, evidences, describes, mentions, refers to, contradicts or comprises the subject.

3.  "Including" shall mean "including, but not limited to."

4.  "And" and "or" shall be construed conjunctively or disjunctively as required by the context within the scope of discovery request so as not to exclude any information that might be deemed outside the scope of the request by any other construction.

5. "Person" shall mean and include a natural person, firm, association, organization, partnership, business trust, corporation, public or private, or government entity.

6. "Parties" includes all named parties in this litigation and their agents, employees, servants, officers, and directors.

7. "Plaintiff's" and "Policyholder" means Plaintiff's Policyholder and his/her/its employees, representative, agents, employees, servants, officers, and directors.

8. "You," "Your," "Defendant," and "Insurance Company" means Defendant Insurance Company and its employees, representatives, agents, employees, servants, officers, directors, and each person presently or formerly acting or authorized to act on its behalf.

9. "Policy" means Policy No. MAC 0323134 06 issued by Great American Insurance Company.

10. "Broker" means an insurance broker, excess/surplus lines broker, licensed insurance agent, managing general agent, or other insurance intermediary involved in the purchase, sale, negotiation, or placement of the Policy.

11. "Coverage Letter(s)" means the correspondence from You to Policyholder dated anytime, regarding Your position as to coverage for the Loss.

12. "Loss" means the event on or around July 21, 2018, in which Policyholder suffered property damage and has consequently incurred extra expense and business income losses.

13. "Policyholder's Claim" or "Claim" shall refer to the claim made by Policyholder to Insurance Company for direct physical loss or direct physical damage to the insured properties located at 1101 – 1204 Par Three Way, Lithonia, GA 30038.

14. "Possession, custody or control" includes the joint or several possession, custody or control not only by the person to whom these interrogatories are addressed, but also the joint or

several possession, custody or control by each or any other person acting or purporting to act on behalf of the person, whether as employee, attorney, accountant, agent, sponsor, spokesman, or otherwise.

## **INTERROGATORIES**

1.

Identify any and all persons involved in any way whatsoever in the investigation, adjustment, and handling of Plaintiff's claim for insurance benefits arising from the wind/hail loss on or about July 21, 2018, and for each, please include:

    (a) His/her name, place of employment, address, and telephone number;

    (b) His/her title, license(s), and certification(s);

    (c) The date his/her involvement in this claim commenced;

    (d) The date his/her involvement in this claim concluded; and

    (e) A description his/her involvement in this claim.

(This Interrogatory seeks the name of every employee of Defendant who had anything to do with the claim, including the adjusters, branch claims representatives, regional or home office claims auditors or claims examiners, all claims managers and claims supervisors at any level, executive officers of the company, and all members of any review committee or claims committee).

2.

If any individual identified in your answer to Interrogatory No. 1 is or was your employee, agent, or representative, please state whether said individual has been promoted, demoted, terminated, or transferred from July 21, 2018 to present; describe in detail the change in employment status of each such individual, including the circumstances of the person's

employment before and after the change in status; and provide the last-known residence address and telephone number or place of current employment of each such past former employee.

3.

Describe each and every investigative step conducted by you, or by anyone on your behalf, regarding Plaintiff's insurance claim, beginning with the date and method you received notice of the subject claim.  Identify any and all documents and correspondence (paper or electronic) generated, obtained, or otherwise placed in your possession, in the course of your investigation.

4.

Please identify the individual(s) who have final authority to authorize settlement of this claim, and for each, please list their name, place of employment, position, telephone number, and email address.

5.

State with specificity any and all applicable building codes (state, county, city, or municipal) and engineering industry standards and practices for the investigation, evaluation, and repair/remediation of damages caused by wind/hail to Plaintiff's Insured Property you relied upon during your investigation of this claim, and state:

   (a) The name(s), address(es), and telephone number(s) of all persons who have personal knowledge of any of these industry standards or practices; and

   (b) Identify all documents that support or explain any of these building codes, engineering industry standards, and practices.

   (c) If you do not have an answer to this Interrogatory, please affirmatively state that no such building codes, engineering industry standards or practices were relied upon for the investigation, evaluation, and repair/remediation of Plaintiff's damages.

6.

Identify each and every person that you expect to call as an expert witness at trial, and for each, please state: the subject matter on which the expert is expected to testify; the substance of the facts and opinions to which the expert is expected to testify; a summary of the grounds for each opinion; the data or other information considered by the expert in forming their opinions; whether a written report has been prepared; and identify the data or other information considered by the expert in forming their opinions & all documents you furnished to the expert.

7.

If you have retained or employed an expert in anticipation of litigation or preparation for trial who is not expected to be called as a witness at trial, please identify said expert(s), and for each, please state their address and contact information.

8.

State the following concerning notice of claims and timing of payment:

    (a) The date and manner in which you received notice of the claim.

    (b) The date and manner in which you acknowledged receipt of the claim.

    (c) The date and manner in which you commenced investigation of the claim.

    (d) The date and manner in which you requested from the claimant all items, statements, and forms that you reasonably believed, at the time, would be required from the claimant.

    (e) The date and manner in which you notified the claimant in writing of the acceptance or rejection of the claim.

    (f) The date, amount, and reason for any insurance proceed payments you have made to the Plaintiff.

9.

Has Plaintiff's claim for insurance benefits been rejected or denied? If so, state the reasons for denying the claim.

10.

Please identify any and all written procedures or policies (including document(s) maintained in electronic form) you maintained for your internal or third party adjusters to use in connection with handling property and casualty claims in the state of Georgia arising out of the Plaintiff's damage it suffered as a result of the wind/hail event on July 21, 2018.

11.

Please state with specificity when (approximate date) and why did you anticipate litigation with respect to Plaintiff's cause of action, and state:

(a) The name(s), address(es), and telephone number(s) of all persons who have personal knowledge of any of these facts; and

(b) Identify all documents that support or explain any of these facts.

12.

Identify any and all documents (including those maintained electronically) relating to the investigation or handling of a claim for windstorm/hail insurance benefits in the state of Georgia that you routinely generated during the course of the investigation and handling of a claim (e.g. Investigation Reports; z-records; reserve sheet; electronic claims diary; a claims review report; any team report relative to this claim) from January 1, 2018 to the present, and state whether you generated any of these documents during the course of investigating and handling Plaintiff's claim.

13.

Have any documents (including those maintained electronically) relating to the investigation or handling of Plaintiff's claim for insurance benefits been destroyed or disposed of? If so, please identify what, when and why the document was destroyed, and describe your document retention policy.

14.

Do you contend that the insured premises were damaged by any excluded peril? If so, state in detail your factual basis for this contention, and identify any documents which support your contention.

15.

Do you contend that any act or omission by the Plaintiff voided, nullified, waived or breached the insurance policy in any way? If so, state in detail your factual basis for this contention, and identify any documents which support your contention.

16.

Do you contend that the Plaintiff failed to satisfy any condition, covenant, or duty of the policy in any way? If so, identify each condition, covenant, or duty of the Policy which you contend the Plaintiff failed to satisfy, and for each, state the factual and legal basis for your contention(s) that the Plaintiff has not satisfied that particular condition or duty and identify all of the documents relating to your assertion and all persons with knowledge of such facts.

17.

Do you evaluate the performance of the personnel involved in handling Plaintiff's claim (including, but not limited to, claims representative, claims adjuster, independent adjuster,

manager)? If so, state what performance measures are used for said personnel, and describe your bonus or incentive plan for said personnel.

18.

Identify any portion of the Loss, as set forth in Plaintiff's Claim that you contend is not covered by the Policy. Include in your answer the specific amounts you contend are not covered, and for each such amount, please identify all facts, including exclusions or other provisions of the Policy, supporting your contention that no coverage exists.

19.

Do you contend that the Plaintiff has failed to mitigate any damages? Unless your answer is anything other an unqualified negative, identify the factual basis for your contention that the Plaintiff has failed to mitigate. Include in your answer identification of all documents relating to your assertion and all persons with knowledge of the facts averred in your answer.

20.

Do you contend that the Plaintiff failed to cooperate with the investigation or settlement of the claim? Unless your answer is anything other than an unqualified negative, state, explain, and describe the factual and legal basis for your contention that the Plaintiff failed to cooperate with the investigation or settlement of the claim.

21.

With regards to your relationship with the Policyholder(s):

(a) When did the Policyholder(s) first obtain a policy of insurance from you?

(b) When did the Policyholder(s) first apply for a policy of insurance from you for the Insured Property? Was their application accepted? Why or why not?

(c) What underwriting documents were created in the formation of the Policyholder(s)'s original policy of insurance for the Insured Property?

(d) Did you inspect the Insured Property prior to issuing your first policy of insurance for the Insured Property?  If so, please specifically identify when the inspection occurred; the name, place of employment, and address of the individual who conducted the inspection; and whether a report was drafted as a result of this inspection.  If not, please affirmatively state that no such inspection occurred.

(e) Did you inspect the Insured Property prior to renewing the Policy for the policy period at issue in this claim?  If so, please specifically identify when the inspection occurred; the name, place of employment, and address of the individual who conducted the inspection; and whether a report was drafted as a result of this inspection.  If not, please affirmatively state that no such inspection occurred.

(f) Have you issued a Notice of Non-Renewal or Cancellation of the Plaintiff's Policy for the Insured Property?  If so, please identify the date of such correspondence; the specific type of correspondence; your purported reasoning for said correspondence or action; and the specific facts or documents you relied upon in drafting said correspondence or action.

22.

Do you contend that the Plaintiff provided false, incomplete, or deficient information that was material to the underwriting of your Policy? If your answer is anything other than an unqualified negative, state with specificity the factual and legal basis for your contention, and identify all documents that relate to your response.

23.

Identify any and all photographs, audiotape recordings, videotape recordings, or written statements taken or obtained during the course of your investigation of the claim. In your response, please describe in detail what each such document depicts, and state the date when each such photograph, statement, or recording was taken, made, or obtained.

24.

With regards to your Answer and Affirmative Defenses to Plaintiff's Complaint:

(a) State the good faith factual basis for your Affirmative Defense(s), and identify the date, type of document, author(s), recipient(s), and present custodian of every document known or believed by you to refer or relate in any way to the facts you contend support your Affirmative Defense(s);

(b) Describe comprehensively and in detail all bases, both factual and otherwise, documents, notes, memorandum, reports, or other documentation in whatever form, that support or substantiates your denials of any of the paragraphs of Plaintiff's Complaint. Please state:

    i. The name(s), address(es), and telephone number(s) of all persons who have personal knowledge of any of these facts; and

    ii. Identify all documents that support or explain any of these facts.

## REQUEST FOR PRODUCTION OF DOCUMENTS

## INSTRUCTIONS

1. You are instructed to promptly amend or supplement any and all responses made hereto if you learn that any response to these interrogatories, requests for production, and/or requests for admission was incomplete when made or is no longer complete or correct.

2. Each document request shall be deemed to call for the production of the original document or documents. If the original is not available, then a copy shall be produced if it differs in any respect from the original or from other copies (e.g., by reason of handwritten, typed, or printed notes or comments having been added to the copy that do not appear on the original).

3. If a request seeks a document that, to your knowledge, does not exist, please state that the document does not exist.

4. Without interfering with the readability of a document, please identify by Bates number or other means the request(s) to which the document is responsive.

5. For each document responsive to any request that is withheld under a claim of privilege, provide a privilege log containing the following information:

   a. The date the document was prepared or created;

   b. The name and title of the author or authors of the document;

   b. A summary of the subject matter of the document;

   c. The identity of each person or persons (other than those giving solely stenographic or clerical assistance) who assisted the author or authors in creating the document;

   d. The identity of each person to whom the document or the contents of the document have been communicated (either intentionally or inadvertently), the date(s) of such communication, the title of each such person, and the date of such communication;

   e. A statement of the basis on which privilege is claimed; and

   f. The identity and title, if any, of the person or persons providing the information requested in subsections (a) through (f) above.

## **DEFINITIONS**

Please refer to the definition section listed above.

## **REQUEST FOR PRODUCTION OF DOCUMENTS**

1.

All documents and tangible things identified, created, or relied upon by you in your responses to Plaintiff's Interrogatories.

2.

The entire claim files from the home, regional, & local offices, third party adjusters/adjusting firms, and ladder assists regarding the claim that is subject of this matter, including copies of the file jackets, "field" files and notes, and drafts of documents contained in the file.

3.

A certified copy of the insurance policy pertaining to the claims involved in this suit.

4.

The Complaint Log you are required to keep for windstorm/hail complaints in the state of Georgia filed over the past three years.

5.

Your written procedures or policies (including document(s) maintained in electronic form) that pertain to the handling of windstorm/hail claims in the state of Georgia from July 21, 2018 to present. If the party answering this request is an independent adjuster, produce the requested documents for both the independent adjusting company and the party [carrier] that hired you with respect to this claim.

6.

Any and all weather reports in your possession for the Insured Property on July 21, 2018, regardless of whether you relied upon them in making your claims decision in this matter.

7.

The Operation Guides which relate to the handling of windstorm/hail claims in the state of Georgia in effect from July 21, 2018 to present. If the party answering this request is an independent adjuster, produce the requested documents for both the independent adjusting company and the party [carrier] that hired you with respect to this claim.

8.

The field notes, measurements, electronic diary, and file, including all electronic and paper notes created, obtained, or maintained by the claims personnel, contractors, adjusters, and engineers who physically inspected or adjusted Plaintiff's claim for the subject property.

9.

The emails, instant messages, and internal correspondence pertaining to Plaintiff's underlying claim.

10.

Defendant's internal newsletters, bulletins, publications and memoranda relating to policies and procedures for handling windstorm/hail claims in the state of Georgia that were issued from January 1, 2018 through the present, including, but not limited to, memoranda issued to claims adjusters.

11.

The price guidelines that pertain to the handling of claims arising out of windstorm/hail claims in the state of Georgia. In the event you utilize published guidelines of "off the shelf"

software, without modification, as your guidelines, you may respond by simply identifying the name, version, and/or edition of the published guidelines you use.

12.

The documents, manuals, and training materials, including audio and/or video tapes used in training, overseeing, or supervising your personnel employed in adjusting property claims in the state of Georgia and in effect from January 1, 2018 to the present.

13.

"Pay sheet," "Payment Log," or list of payments, as well as copies of any and all checks or payments made on Plaintiff's claim.  This includes, but is not limited to, all payments issued to Plaintiff or Plaintiff's agents or representatives; all payments issued to independent adjusters, ladder assists, and engineers retained in your adjustment of this claim; and all expenses incurred by you in your adjustment of this claim.

14.

The documents reflecting reserves applied to the subject claim.

15.

The bonus or incentive plan for the managers, adjusters, and claims representatives responsible for windstorm/hail claims in the state of Georgia in effect for the time period of January 1, 2018 through the present.

16.

For the past five years, the portions of the personnel file of the adjuster(s) involved in handling Plaintiff's claim that pertain to disciplinary actions associated with claims handling, and performance under a bonus or incentive plan.

17.

The documents reflecting your criteria and procedures for the selection and retention of independent adjusters and engineers handling windstorm/hail claims in the state of Georgia from January 1, 2018 through the present.

18.

If a third party engineer evaluated the subject property, provide the documents that show the number of other matters in which the same engineer or engineering firm were retained by you to evaluate other properties in the state of Georgia over the past five years.

19.

The contract between the Defendant insurer and the Defendant third party adjusting company.

20.

The correspondence between the Defendant insurer and the third party adjusters/adjusting firms, engineers and other estimators who worked on the claim that pertain to the Claim at issue.

21.

All documents submitted to or received from each person you expect to call as an expert witness at trial, including, but not limited to, a list of all publications authored by the witness, a list of all other cases in which the witness has testified as an expert at trial or by deposition, a current *curriculum vitae* for the witness, all reports generated by the witness, and all documents and tangible things reasonably relied upon by the witness in forming his or her expert opinion.

22.

All evidence you intend to introduce at the trial of this matter.

It is requested that the aforesaid production be made within forty-five (45) days of service of this request at the offices of The Huggins Law Firm, LLC, 110 Norcross Street, Roswell, GA 30075.

Dated, this 10th day of May, 2021.

RESPECTFULLY SUBMITTED,

For: The Huggins Law Firm, LLC

J. Remington Huggins, Esq.
Georgia Bar No.: 348736
Michael D. Turner, Esq.
Georgia Bar No.: 216414
Foster L. Peebles, Esq.
Georgia Bar No.: 410852
Attorneys for the Plaintiff
110 Norcross Street
Roswell, GA 30075
(o) (770) 913-6229
(e) remington@lawhuggins.com
(e) mdturner@lawhuggins.com
(e) fpeebles@lawhuggins.com

## VERIFICATION

STATE OF _____      )
                                                            ss:
COUNTY OF _____      )


_____ being duly sworn, deposes and says that I am the

Defendant in this action, that I have read the foregoing answers to interrogatories and request for

production of documents and know the contents thereof, and the same are true to my knowledge,

information and belief.


Therefore, I certify under penalty of perjury under the laws of the State of Georgia that the foregoing

Answers/Responses to the Plaintiff's First Set of Interrogatories and Request for Production of

Documents Directed to the Defendant are true and correct.



_____
Signature of Authorized Agent for Defendant
Print Authorized Agent for Defendant's Name: _____



Sworn to and subscribed before me this the _____ day of _____ 2 0 2 1 __.



_____
Notary Public: _____

Fulton County Superior Cou
***EFILED***T
Date: 5/10/2021 12:20 P
Cathelene Robinson, Cle

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **FAIRINGTON PARK CONDOMINIUM** ) | |
| **ASSOCIATION, INC. d/b/a FAIRINGTON** ) | |
| **PARK CONDOMINIUM ASSOCIATION,** ) | |
| ) | **CIVIL ACTION FILE NO.:** |
| **Plaintiff,** ) | 2021CV349336 |
| ) | |
| **v.** ) | |
| ) | |
| **GREAT AMERICAN** ) | |
| **INSURANCE COMPANY,** ) | |
| **a foreign corporation,** ) | |
| ) | |
| **Defendant.** ) | |

## CERTIFICATE OF SERVICE

This is to certify that I have served the foregoing upon the Defendant Great American Insurance Company ("GAIC") by serving them with the ***Summons, Complaint and Exhibits***, as well as ***Plaintiff's First Set of Interrogatories and Request for Production of Documents*** in accordance with the Court's rules to the Defendant GAIC at the address listed below:

**Ashley Hasty, c/o CT Corporation System**
**Registered Agent for Defendant GAIC**
**1201 Peachtree St. NE**
**Atlanta, GA 30361**

Respectfully submitted, this the 10th day of May, 2021.

For: The Huggins Law Firm, LLC

J. Remington Huggins, Esq.
Georgia Bar No.: 348736
Michael D. Turner, Esq.
Georgia Bar No.: 216414
Foster L. Peebles, Esq.
Georgia Bar No.: 410852
Attorneys for the Plaintiff
110 Norcross Street
Roswell, GA 30075

(o) (770) 913-6229
(e) remington@lawhuggins.com
(e) mdturner@lawhuggins.com
(e) fpeebles@lawhuggins.com